**John PETRUCELLI,
Petitioner-Appellant,**

v.

**Phillip COOMBE, Jr., Superintendent,
Eastern New York Correctional
Facility, Respondent-Appellee.**

**No. 915, Docket 83–2313.**

United States Court of Appeals,
Second Circuit.

Argued March 13, 1984.

Decided May 18, 1984.

Lawrence A. Vogelman, New York City (Barry C. Scheck, Cardozo Criminal Law Clinic, New York City, of counsel, Lisa Sarnoff, Sanford Strenger, Law Students, on brief), for petitioner-appellant.

Jeremy Gutman, Asst. Dist. Atty., Bronx County, New York City (Mario Merola, Dist. Atty., for Bronx County, Billie Manning, Asst. Dist. Atty., Bronx County, New York City, of counsel), for respondent-appellee.

Before FEINBERG, Chief Judge, and MANSFIELD and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

John Petrucelli appeals the dismissal of his petition for a writ of habeas corpus by the United States District Court for the Western District of New York, Curtin, C.J. He asserts that his right not to be placed in double jeopardy was violated when the state court prosecutor deliberately attempted to provoke a mistrial and when the state trial court admitted evidence that he committed a murder after he had already been acquitted of the murder in a previous trial. We hold that Petrucelli did not exhaust his state remedies for his second double jeopardy claim. Accordingly, we remand Petrucelli's petition to the district court with instructions to dismiss for failure to exhaust state remedies.

## BACKGROUND

In the evening hours of December 22, 1968, Joseph Gernie and Liberto Moresco entered a Bronx bar together. About half an hour later, appellant Petrucelli walked into the bar along with Anthony Zinzi and Ernest Coralluzzo. Shortly thereafter, a car mechanic heard gunfire erupt from the bar and saw three men dart out of the building. The mechanic notified two policemen who were close by. The policemen called for assistance, entered the bar and found Gernie on the floor, dead from gunshot wounds.

Immediately before the police arrived, a witness across the street from the bar saw a man later identified as Moresco walking in the parking lot with a gun in his hand. An automobile pulled up to Moresco and the witness then saw Moresco fly into the air, apparently having been hit by the car. Moresco died shortly thereafter, but his death, like Gernie's, was caused by gunshot wounds.

Petrucelli had fled the scene and did not reappear until about four years later, when he voluntarily surrendered to authorities. In his first trial, he was acquitted of Moresco's murder but was found guilty of first degree manslaughter in the death of Gernie. The Appellate Division reversed the conviction on grounds of prosecutorial misconduct. After Petrucelli's motion to prevent a second trial for Gernie's death was denied, he was tried and convicted again for the first degree manslaughter of Gernie. His conviction was affirmed without opinion by the Appellate Division and he was denied leave to appeal to the New York Court of Appeals.

After his conviction was affirmed, Petrucelli sought a writ of habeas corpus in federal court. The district court determined that he had not exhausted his state remedies on his claims and dismissed the habeas petition. Petrucelli returned to the state court system seeking collateral relief on the ground that the prosecutor's misconduct at his first trial barred his retrial for the same crimes. His application was denied by the state trial court. The Appellate Division affirmed and he was denied leave to appeal to the Court of Appeals.

Petrucelli then returned to the federal courts seeking habeas corpus relief on two grounds. One was his claim that prosecutorial misconduct barred his retrial for the manslaughter of Gernie. The other was a constitutional collateral estoppel claim that his double jeopardy rights were violated when, at the second Gernie manslaughter trial, the prosecution attempted to prove that he murdered Moresco (the "Moresco evidence"), despite his having been acquitted of that crime previously. Petrucelli also claimed that even if the trial court could have admitted the Moresco evidence, it was constitutionally required to issue a jury instruction stating that Petrucelli had been acquitted of the Moresco murder. *See, e.g., United States v. Mespoulede,* 597 F.2d 329 (2d Cir.1979).[1]

---

1. After *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), held that habeas corpus petitions containing both exhausted and

unexhausted claims must be dismissed by the district court, the parties submitted a stipulation amending petitioner's original petition to delete

On August 3, 1982, the district court conditionally granted a writ of habeas corpus. 544 F.Supp. 627 (W.D.N.Y.1982). It held that Petrucelli had exhausted his state remedies on both claims and that the prosecutor at the first Gernie trial intentionally attempted to provoke a mistrial by engaging in serious misconduct. *See Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). It also analyzed the Moresco evidence claim, apparently concluding that its admission violated Petrucelli's double jeopardy rights and was not harmless error. However, the court did not base the habeas relief it granted on that ground.

The condition the district court attached to the habeas relief it granted was that before the writ issued, the state would be allowed to introduce evidence of the motives for the prosecutor's conduct in the first Gernie trial. After an adversary hearing in which the state offered such evidence, the district court issued another opinion. 569 F.Supp. 1523 (W.D.N.Y.1983). First, it held again that Petrucelli had exhausted his state remedies on both claims. Next, the court held that the prosecutor did not intentionally attempt to improve his chances for a conviction by deliberately provoking a mistrial. Accordingly, it held that relief was not warranted under *Oregon v. Kennedy.* Finally, the court also reconsidered the constitutional collateral estoppel claim and held that (1) issue preclusion was not a constitutional doctrine, and (2) even if the evidence was admitted in error or a limiting jury instruction was necessary, the error was harmless because the evidence of guilt was overwhelming. Accordingly, the court dismissed Petrucelli's habeas petition on the merits. Petrucelli now appeals.

## DISCUSSION

■ A prisoner is required to exhaust his state remedies before a federal writ of habeas corpus can be granted (unless state procedures would make exhaustion futile). 28 U.S.C. § 2254(b), (c) (1982); *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam). This requirement gives the state courts "an opportunity to consider and correct any violation of federal law," and thus "expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir. 1982) (en banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). Where a petition containing exhausted and unexhausted claims is presented to a federal district court, that court must dismiss the petition, thus giving the prisoner the option of returning to state court to litigate his unexhausted claims or amending his district court petition to delete them. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). If the district court reaches the merits of a petition containing unexhausted claims, a Court of Appeals will remand the petition to the district court for dismissal. *See, e.g., Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam); *Rose v. Lundy,* 455 U.S. at 522 n. 14, 102 S.Ct. at 1205 n. 14; *see also Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam).

■ In order to satisfy the exhaustion requirement, a prisoner must have "fairly presented" the same legal claim to the state courts that he presents in his federal habeas petition. *Daye v. Attorney General,* 696 F.2d at 191–92. Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982), a habeas petition must put state courts on notice that they are to decide federal constitutional claims. *See, e.g., Daye,* 696 F.2d at 192. It is not necessary for a habeas petitioner to cite "book and verse" of the Constitution, *id.* (quoting *Picard v. Connor,* 404 U.S. 270,

an apparently unexhausted claim. *See Petrucelli v. Smith,* 544 F.Supp. 627, 629 n. 1 (W.D.N.Y.

1982).

278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)), but adequate notice to the state courts that they are to decide federal constitutional claims at least includes:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 194.

■ In his Appellate Division brief, Petrucelli—who was represented by counsel—contended that the introduction of the Moresco evidence "deprived him of fair trial [sic] and due process of law." *People v. Petrucelli,* No. 621/1975, Br. of Defendant-Appellant, at 10 (hereinafter "Appellant's State Brief"). We do not find that this necessarily "call[ed] to mind a specific right protected by the Constitution" or otherwise put the Appellate Division on notice that it was to decide a constitutional double jeopardy claim. "Alleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim." *Daye v. Attorney General,* 696 F.2d at 193 (quoting *Kirksey v. Jones,* 673 F.2d 58, 60 (2d Cir.1982)). Similarly, a mere statement that "due process" rights have been violated does not necessarily give rise to a specific federal constitutional claim. "Due process," like "fair trial," can be a catchphrase used by habeas petitioners as part of an allegation about any type of trial court error, including errors in rulings based on state law. *See, e.g., Nelson v. Hutto,* 597 F.2d 137, 138 (8th Cir.1979) (per curiam). Indeed, appellant here used the term "due process" three times in his Appellate Division brief; once without support in a section introduction, Appellant's State Brief at 10, and twice in the context of state law evidentiary discussions which he supported with state law cases that used state law evidentiary analysis. *Id.* at 13, 15. Under these circumstances, we cannot say that

Petrucelli's allegations that his "due process" or "fair trial" rights were violated could alone have put the state courts on notice that they were to decide a federal double jeopardy claim.

We also cannot say that Petrucelli's general argument to the Appellate Division made clear that he was asserting federal constitutional rights. Petrucelli argued that the state trial court should not have admitted "any evidence relating to Moresco's death on the grounds that by the first jury's verdict, the issue was conclusively determined against the prosecution and the prejudice caused by the evidence would far outweigh its probative value." Appellant's State Brief, at 10. This calls to mind not the constitutional doctrine of double jeopardy, but the common law or statutory authority that evidence as to prior crimes may be excluded where it is more prejudicial than probative. *See, e.g., People v. McCleaver,* 78 Misc.2d 48, 50, 354 N.Y.S.2d 847 (S.Ct.1974) (discretion to exclude proof of prior felony convictions offered for impeachment purposes "is in conformity with the common law authority of a court ... to exclude competent evidence where its prejudicial impact far outweighs its relevance or materiality"); *cf.* Fed.R.Evid. 403.

■ In his brief to this Court, Petrucelli claims that he exhausted his state remedies because he cited federal constitutional cases in his state appellate brief. As an example of this, he states that he "relied on *United States v. Phillips,* 401 F.2d 301 (7th Cir.1968) which in turn extensively discussed *United States v. Kramer,* 289 F.2d 909 (2d Cir.1961), in terms of double jeopardy and *res judicata* in criminal convictions." Br. for Appellant at 12 n. *. We have examined the authorities in Petrucelli's brief to the Appellate Division and find that no case he cited in his collateral estoppel section actually used constitutional analysis. Furthermore, *Phillips,* far from "extensively discuss[ing]" *Kramer,* mentioned it only once as support for the general proposition that *res judicata* and collateral estoppel apply in criminal cases.

401 F.2d at 304–05. *Kramer* does, however, support the proposition that collateral estoppel is a constitutional doctrine in criminal cases under the Double Jeopardy Clause. Since *Kramer*, several Supreme Court cases have drawn the same conclusion. *See, e.g., Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (first such case).

We do not find that *Phillips'* isolated reference to *Kramer* was sufficient to put the New York courts on notice that Petrucelli was making a federal constitutional argument. First, at least one court has held that if a state court appellant cites to a case (here, *Phillips*) that does not explicitly employ federal constitutional analysis, but that case (*Phillips*) cites to a second case (*Kramer*) that does so, this does not constitute sufficient notice of the federal constitutional nature of the claim. A contrary holding, the court said, would "threaten[ ] to make a mockery of the exhaustion doctrine." *Williams v. Wainwright*, 577 F.Supp. 894, 897 (S.D.Fla.1984).

We agree. Petrucelli cited more than thirty cases to the Appellate Division in his collateral estoppel section; those cases undoubtedly contained hundreds of citations. The Appellate Division could not have been expected to research them all in order to find some hidden constitutional argument. Here, the case Petrucelli actually cited, *Phillips*, used no constitutional analysis. It simply decided that admitting evidence of crimes for which defendant had been acquitted, without informing the jury of the acquittal, was "clearly erroneous" and that even with a jury instruction as to the acquittal, the evidence was more prejudicial than probative. It thus held that the trial court abused its discretion in admitting the evidence. 401 F.2d at 304–06.

Second, *Phillips'* citation to *Kramer* was the last citation in a group of three. The first of those three citations was to *Hoag v. New Jersey*, 356 U.S. 464, 471, 78 S.Ct. 829, 834, 2 L.Ed.2d 913 (1958), a criminal case

which stated that the Supreme Court "entertain[ed] grave doubts whether collateral estoppel can be regarded as a constitutional requirement." Thus, the citation to *Kramer* was most likely not part of a constitutional analysis.[2]

Third, even if citing *Phillips* might have suggested a constitutional argument because *Phillips* cited *Kramer*, we cannot find that a petitioner has exhausted his state remedies merely because one case with a vaguely constitutional analysis is buried amid a multitude of cases in his brief that use state law or common law analysis. As another Court of Appeals recently stated in a similar case:

> [E]ven had one case out of forty in petitioner's brief alluded to a federal constitutional ground, we would [still find that the constitutional claim was not sufficiently raised]. Where a habeas corpus petitioner's only basis for contending that he has exhausted state remedies is the citation of state or federal authorities employing constitutional analysis such authorities must play a prominent part in his state court argument.

*Dougan v. Ponte*, 727 F.2d 199, 202 (1st Cir.1984) (applying *Daye v. Attorney General*). We agree. A state court should not be expected to guess that an appellant who has cited to one case possibly employing constitutional analysis among a much larger number of state law cases is actually making a federal constitutional argument, especially where the petitioner's argument itself is made in a state law evidentiary context. Federal judges will not presume that state judges are clairvoyant. Thus, although a habeas petitioner need not cite "book and verse" of the federal Constitution, he is on much safer ground if he explicitly identifies his federal constitutional arguments to the state courts. This not only makes it easier for state courts to identify federal constitutional arguments, it also "obviate[s] the need for the sort of minute retrospective dissection of state

2. The second of the three cases cited was *Sealfon v. United States*, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948), which did not discuss *res judicata* or collateral estoppel in constitutional terms.

court proceedings that this opinion exemplifies." *Dougan v. Ponte,* 727 F.2d at 202.

■ The difference between classifying appellant's argument as a state law evidentiary argument and as a federal constitutional one is more than semantical. When a trial judge admits evidence because he finds it more probative than prejudicial, an appellate court will not find that the evidence should have been excluded absent a clear showing that the trial judge abused his discretion. *See, e.g., United States v. Williams,* 577 F.2d 188, 191 (2d Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *People v. Davis,* 57 A.D.2d 1013, 1014, 394 N.Y.S.2d 486 (1977). But when the argument is raised to the federal constitutional level, the trial court will have no discretion at all as to whether to exclude the evidence; if its admission would violate the Double Jeopardy Clause, the court must exclude it. *Cf. Ashe v. Swenson,* 397 U.S. at 442–43, 90 S.Ct. at 1193–94 ("[If] collateral estoppel is embodied in [the] guarantee [against double jeopardy], then its applicability … is no longer a matter to be left for state court determination within the broad bounds of 'fundamental fairness,' but a matter of constitutional fact we must decide through an examination of the entire record.") (citations omitted). Thus, a state appellate court deciding whether a trial court abused its discretion by admitting evidence of prior crimes faces a much different legal question than a state court deciding whether the same evidence must be excluded because its admission would violate the Double Jeopardy Clause. *See Steele v. Taylor,* 684 F.2d 1193, 1206 (6th Cir.1982) (admissibility of tape recording was presented to state courts as state law evidentiary question of "other act" evidence rather than as federal due process claim; court holds this

claim unexhausted), *cert. denied,* —— U.S. ——, 103 S.Ct. 1502, 75 L.Ed.2d 932 (1983); *see also United States ex rel. Nance v. Fairman,* 707 F.2d 936, 941 (7th Cir.1983). As discussed above, a habeas petitioner cannot present a legal question to the federal courts that he has not raised before the state courts. Because the New York courts have had only the opportunity to rule on the state evidentiary claim, we cannot yet rule on the federal constitutional claim.

Finally, we note that although Petrucelli did clearly raise a double jeopardy argument in his Appellate Division brief, Appellant's State Brief at 22–27, his claim was that he could not constitutionally be tried twice for the manslaughter of Gernie. This is not the constitutional collateral estoppel claim that we find was not exhausted in the state courts.

Our decision in *Daye v. Attorney General* is important in helping federal courts determine whether federal constitutional claims were presented to state courts. It is not, however, a signal to habeas petitioners that every argument remotely resembling a federal constitutional claim puts state courts on notice of the constitutional nature of the claim. Here, Petrucelli's argument was phrased and captioned as a state law evidentiary argument, which Petrucelli supported with cases using state law and common law analysis. Petrucelli did not meet the four *Daye* criteria or otherwise make the constitutional bases of his collateral estoppel argument clear to the state courts before instituting this action.[3]

The order of the district court is vacated and the case is remanded to the district court with instructions to dismiss the petition for failure to exhaust state remedies.[4]

---

3. We agree with the district court that Petrucelli did exhaust his state remedies on the prosecutorial misconduct issue.

4. We find our decision mandated by *Rose v. Lundy.* There, the Supreme Court stated that federal district courts must dismiss habeas petitions containing exhausted and unexhausted claims and reversed and remanded without reaching the merits. Neither *Lundy* nor *Ander-*

*son v. Harless,* however, dealt with the situation that faces us here. In both of those cases, the district court granted the writ and the Court of Appeals affirmed before the Supreme Court reversed. The district courts in those cases found meritorious constitutional arguments that the state courts never had the opportunity to consider, a clear violation of principles of comity.

Here, by contrast, the district court dismissed the petition on the merits. It is entirely possible that the New York courts were not offended by the district court's *rejection* of petitioner's argument without giving the state courts an opportunity to consider it, and that they would not be offended if we affirmed on the merits. *See Rose v. Lundy*, 455 U.S. at 525, 102 S.Ct. at 1207 (Blackmun, J., concurring). If we agreed with the district court that there was no merit to the case, we may be creating unnecessary problems by dismissing the petition for failure to exhaust. *See Galtieri v. Wainright*, 582 F.2d 348, 362 (5th Cir.1978) (en banc). But of course, under *Rose v. Lundy*, we cannot examine the merits.

Moreover, our decision does not promote judicial economy. Petrucelli first brought his two constitutional claims to the district court in 1978. The district court dismissed the petition on the ground that one of the claims was unexhausted. Petrucelli relitigated that claim in the state courts and then returned to the district court, which dismissed his petition on the merits. We are now dismissing Petrucelli's petition because his *second* claim was unexhausted. Petrucelli now has the option of deleting his unexhausted claim or of litigating it in the state courts; either choice may result in a third trip to the federal district court that has heard and rejected each of his two constitutional claims. If this happens, this Court will undoubtedly see Petrucelli's appeal once again.

We are not sure that the Supreme Court intended *Rose v. Lundy* to spawn decisions such as this one; but until the Supreme Court or Congress acts further, the language of *Lundy* requires us to vacate the district court's dismissal on the merits.