Henry BROWN, Petitioner,

v.

Melvin WILLIAMS, Superintendent, Respondent.

No. 91–CV–185S.

United States District Court, W.D. New York.

April 29, 1993.

Henry Brown, pro se.

Kevin M. Dillon, Erie County Dist. Atty., J. Michael Marion, Asst. Dist. Atty., Buffalo, NY, for respondent.

## ORDER

SKRETNY, District Judge.

Whereas petitioner filed a petition for a *writ of habeas corpus* on March 25, 1991, and

Whereas petitioner filed a motion for appointment of counsel on March 12, 1993, and

Whereas the parties have been provided a full opportunity to be heard, and

Whereas this Court referred all pretrial matters to the Honorable Carol E. Heckman, United States Magistrate Judge for the Western District of New York, by an Order dated June 10, 1992, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and

Whereas Magistrate Judge Heckman filed a Report and Recommendation on April 2, 1993, copies of which were mailed by the Clerk of the Court on April 5, 1993, ordering that petitioner's motion for appointment of counsel is denied, and recommending that petitioner's petition be dismissed, and

Whereas no objections to the Report and Recommendation have been received from the parties within ten (10) days of the date of its service, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 30(a)(2), and

Whereas this Court has carefully reviewed the Report and Recommendation, as well as the pleadings and materials submitted by the parties,

IT HEREBY IS ORDERED, that this Court accepts the Report and Recommendation in its entirety, including the authorities cited and the reasons given therein, and that petitioner's petition is DENIED, without prejudice, subject to refiling of the petition with only petitioner's exhausted claims.

FURTHER, that the Clerk of the Court is directed to enter final judgment in favor of respondent and against petitioner.

SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 was referred to the undersigned by the Hon. William M. Skretny to hear and report on all proceedings necessary to a determination of the merits of the factual and legal issues presented. Petitioner has filed a motion for appointment of counsel under 18 U.S.C. § 3006A and 28 U.S.C. § 1915.[1] For the following reasons, Petitioner's motion for appointment of counsel is denied, and it is recommended that the District Court dismiss the petition.

Rule 8(c) of the Rules Governing § 2254 Cases in the United States District Courts provides for appointment of counsel for a petitioner "[i]f an evidentiary hearing is required ... [or] if the interest of justice so requires." Further, 28 U.S.C. § 1915(d) provides:

The court may request an attorney to represent any [indigent] person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

In exercising its discretion to appoint counsel to indigents in civil cases, the Court is guided by the factors set forth in *Cooper v.*

*A. Sargenti Co., Inc.*, 877 F.2d 170 (2d Cir. 1989), and *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir.1986). Under those cases, the Court should "first determine whether the indigent's position seems likely to be of substance." *Hodge, supra*, 802 F.2d at 61. Only if the claim meets this threshold requirement should the Court consider "secondary" criteria, such as the indigent's ability to obtain representation independently, his or her ability to handle the case without assistance in light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity. *Cooper, supra*, 877 F.2d at 172.

In making the threshold inquiry in this case, it has become clear from my review of the state court records filed with Respondent's answer that Petitioner has failed to exhaust his state court remedies as to the claims presented in this petition. I therefore deny Petitioner's request for appointment of counsel, and recommend that the petition be summarily dismissed by the District Court in accordance with the Habeas Corpus Rules.

## BACKGROUND

Petitioner was convicted of criminal possession of a forged instrument in the second degree, attempted petit larceny, and criminal possession of stolen property in the fifth degree, after a jury trial in New York State Supreme Court. He was sentenced as a second felony offender to concurrent prison terms of three and one-half to seven years. Petitioner was subsequently released on parole but remains "in custody" for the purposes of a habeas corpus petition under § 2254. *See, e.g., Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

The indictment charged that Petitioner was involved with two other individuals, Charles Bell and Lawrence Evans, in an attempt to cash a stolen and forged check on May 17, 1988. On February 22, 1989, Evans entered a plea of guilty. Petitioner and Bell were tried together in a trial commencing on

---

1. Petitioner has not submitted a current affidavit of poverty with his request for appointment of counsel. However, in light of the recommendation in this report for disposition of the petition, a current affidavit is unnecessary.

February 28, 1989. On March 3, 1989, the jury found both Petitioner and Bell guilty of the crimes listed above.

At the trial, Linda Bell (Charles Bell's sister-in-law) testified that on or about May 17, 1988, she accompanied Petitioner and Charles Bell to the Brisbane Building in downtown Buffalo (T. 207).[2] According to Ms. Bell, Charles Bell dropped Petitioner off. Petitioner went into the Brisbane Building, and "came back out with some checks" (*id.*). In Linda Bell's presence, Petitioner filled out the front portion of a check belonging to attorney Thomas Twist, which Linda Bell endorsed on the back (T. 169–71; 174–75; 188). She and Charles Bell then tried unsuccessfully to cash the check at two different banks (T. 166–74). They were arrested when Ms. Bell returned to the second bank to retrieve the identification she had left there (T. 173–74). Petitioner was arrested on July 5, 1988. Linda Bell pled guilty to possession of a forged instrument in connection with this incident.

The jury also heard the testimony of Robert Kistner, who was qualified by the trial court as an expert witness in handwriting (T. 413–14). Mr. Kistner testified that he examined the check written in the name of Thomas Twist, compared it to a handwriting exemplar obtained from Petitioner, and determined that Petitioner "probably authored" the front portion of the check (T. 421). The check and handwriting exemplar were admitted as evidence in the case (T. 403–06; 420), and were available to the jury for their inspection (T. 448–49). Mr. Kistner also testified that he "was being ultra conservative when [he] gave an opinion of probable authorship; that [he] could have easily given an opinion of highly probable ..." (T. 449).

On March 16, 1989, after Petitioner's trial, Lawrence Evans signed an affidavit in which he stated that, on or about February 21, 1988, in exchange for a promise of a reduced sentence, he told the prosecuting attorney that he did not know Petitioner, and that it was not Petitioner but another individual involved in the "check ring" (State Court Records, Exh. B). Evans did not testify at Petitioner's trial.

On April 4, 1989, Petitioner moved to set aside the verdict and vacate the judgment based on the information contained in the Evans affidavit. Petitioner claimed that the prosecution knew about this exculpatory evidence prior to trial, but failed to disclose it under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Petitioner also claimed that the Evans affidavit contained new evidence which, had it been presented to the jury, would have resulted in a more favorable verdict. This motion was summarily denied by the trial court on April 24, 1989 (S. 2–6).

On April 28, 1989, Petitioner filed a notice of appeal. As grounds for the appeal, Petitioner argued (1) that the trial court committed reversible error by denying his motion to set aside the verdict based on the prosecution's failure to disclose *Brady* material, (2) that the trial court erred by admitting evidence of uncharged crimes, and (3) that he was denied his constitutional right to effective assistance of counsel (State Court Records, Exh. A).

In a memorandum order dated June 22, 1990, the Appellate Division, Fourth Department, denied Petitioner's appeal. *People v. Brown,* 162 A.D.2d 1030, 557 N.Y.S.2d 812 (4th Dept.1990). According to the Court, Petitioner was not entitled to a new trial based on a *Brady* violation, or based on newly discovered evidence, since he failed to show that there was a reasonable probability that the result of the trial would have been different had the evidence been disclosed. *Id.,* 162 A.D.2d at 1031, 557 N.Y.S.2d at 813.

By letter dated July 26, 1990, Petitioner applied for a certificate granting leave to appeal, in which appellate counsel set forth the same grounds as presented to the Appellate Division (State Court Records, Exh. D). The New York Court of Appeals denied leave to appeal. *People v. Brown,* 77 N.Y.2d 836, 567 N.Y.S.2d 205, 568 N.E.2d 654 (1991).

---

**2.** References preceded by the letter "T" are to pages of the trial transcript, filed with this Court as part of Petitioner's state court records. References to the letter "S" are to pages of the transcript of the sentencing proceedings on April 24, 1989, also filed with this Court as part of Petitioner's state court records.

Petitioner filed this habeas corpus petition on March 25, 1991, asserting the same three grounds for relief as he asserted in his appeal to the state courts, and relying on his Appellate Division brief and application to the Court of Appeals for his legal arguments.

Respondent answered the petition on October 8, 1991, pursuant to this Court's order granting an enlargement of time. In his answer, Respondent asserts that Petitioner has failed to exhaust his state remedies since, in his application to the state Court of Appeals, he did not seek to have that Court review any of his grounds for relief on the basis of federal constitutional violations. Respondent also asserts that Petitioner cannot now challenge the uncharged crimes evidence since that issue was presented purely as a matter of state law on both his application to the Court of Appeals and his appeal to the Appellate Division. Finally, Respondent relies on his appellate brief for his legal arguments should the Court reach the merits of the petition.

## DISCUSSION

■ Before a federal court may address the merits of any constitutional issue on a writ of habeas corpus, the petitioner must have exhausted all available state remedies as to that issue. 28 U.S.C. § 2254(b), (c); *Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir.1991). Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained. *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 190 n. 3 (2d Cir.1982), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

■ The exhaustion doctrine also requires that a habeas petitioner seeking to upset his or her state conviction on federal grounds must first give the state courts a fair opportunity to pass upon all of the federal claims asserted in the petition. *Id.* at 191; *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In order to have fairly presented federal claims to the state courts, the petitioner must set forth in state court all of the essential factual allegations and legal doctrines asserted in the federal petition. *Daye, supra*, 696 F.2d at 192–93.

This requirement is satisfied, even where specific federal constitutional provisions or caselaw have not been cited, if the nature or presentation of the claim in state court was likely to alert that court to the claim's federal nature. *Id.* at 192. As the Second Circuit stated in *Daye:*

> In summary, the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of constitutional litigation.

*Id.* at 194.

■ Where a habeas corpus petition contains both exhausted and unexhausted claims, the petition must be dismissed. *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982). Petitioner then has the choice of returning to state court to litigate the unexhausted claims or refiling the petition in federal court with only the exhausted claims. *Petrucelli v. Coombe*, 735 F.2d 684, 687 (2d Cir.1984).

For the reasons set forth below, I find that petitioner failed to exhause his state court remedies as to his second claim relating to admitting evidence of uncharged crimes. Under *Rose v. Lundy*, the petition therefore should be dismissed.

■ In his state court appeal, Petitioner first argued that the failure of the prosecution to disclose the exculpatory information given by Mr. Evans to prosecutors prior to Petitioner's trial was reversible error under the constitutional doctrine set forth in such federal cases as *Brady* and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). This claim has been exhausted, since the factual and legal basis asserted adequately alerted the state courts to the federal constitutional nature of the claim.

■ Petitioner also argued on appeal that he was denied his right to effective assistance of counsel under the state and federal constitutions, citing to federal cases such as *United States v. Fessel*, 531 F.2d 1275 (5th Cir.1976). My review of the record indicates that the federal constitutional nature of this claim was fairly presented to the state court. This claim has likewise been exhausted.

■ Finally, Petitioner argued to the state courts that evidence of his prior criminal acts—specifically, testimony about his alleged involvement in an ongoing check forging scheme—should not have been admitted at trial, based on the doctrine established by *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286 (1901), and subsequent New York cases. The *Molineux* doctrine is grounded in a fundamental, common-law rule prohibiting the use of evidence of uncharged crimes to show predisposition to commit the crime charged. *See generally id.; see also People v. Lewis*, 69 N.Y.2d 321, 325, 514 N.Y.S.2d 205, 506 N.E.2d 915 (1987). The rule is codified at Rule 404(b) of the Federal Rules of Evidence,[3] and is no doubt familiar to all trial and appellate judges, state and federal.

■ However, Petitioner's assertion of this common-law or statutory authority as grounds for reversible trial error did not sufficiently put the state courts on notice of a federal constitutional claim. For one thing, a defendant's claim that he was denied a "fair trial" does not automatically convert a complaint about admission of other crimes evidence into a federal due process claim. *Kirksey v. Jones*, 673 F.2d 58, 60 (2d Cir. 1982). Instead, the court must look to the factual allegations supporting the claim to determine whether a constitutional violation is involved. *Daye v. Attorney General, supra*, 696 F.2d at 193. According to the Second Circuit in *Daye*:

Some [denial of fair trial claims] will be of patently constitutional dimension. If the defendant claimed that he was accused of one crime but convicted of an entirely different crime and hence was denied a fair trial, no reasonable jurist would doubt that the defendant's claim implicated his right to due process of law. In contrast, a defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers.

*Id.*

Moreover, a claim that a trial court abused its discretion by allowing proof of other crimes does not alone call to mind a doctrine of due process, double jeopardy, or some other specific right protected by the constitution, "but the common law statutory authority that evidence as to prior crimes may be excluded where it is more prejudicial than probative." *Petrucelli v. Coombe, supra*, 735 F.2d at 688 (citing *People v. McCleaver*, 78 Misc.2d 48, 354 N.Y.S.2d 847 (N.Y.Sup.Ct. 1974)).

In this case, Petitioner did not rely on any pertinent federal cases in support of his "other crimes evidence" claim in the state courts, nor did he indicate any reliance on state cases employing a constitutional analysis of this claim on similar facts. As pointed out by the Second Circuit in *Petrucelli*, while a habeas petitioner need not cite "book and verse" of the federal constitution, "he is on much safer ground if he explicitly identifies his federal constitutional arguments to the state courts." *Petrucelli v. Coombe, supra*, 735 F.2d at 689.

Petitioner did not identify any constitutional basis for this claim. He merely argued in

---

**3.** Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide

reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial. Rule 404(b) of the Proposed New York State Code of Evidence provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith on a particular occasion.

his appellate brief that the testimony of certain prosecution witnesses referred to his "alleged involvement in uncharged crimes of a similar nature to those charged in the indictment" (State Court Records, Exh. A, p. 22), and that the admission of this evidence denied him a fair trial (*id.*). He therefore did not assert this claim in terms so particular as to call to mind a specific right protected by the federal constitution. *See Daye v. Attorney General, supra,* 696 F.2d at 194.

Nor did Petitioner allege a pattern of facts "within the mainstream of constitutional litigation." He merely claimed that alleged accomplice Linda Bell repeatedly implied during her trial testimony that Petitioner had been involved in an on-going pattern of check forging. He also claimed that the prosecution's handwriting and documents experts gave testimony which formed the basis for the documents expert's opinion as to whether Petitioner authored another forged check, referred to as the "Caprio" check, in addition to the "Twist" check which was the subject of the trial. Nothing in the Petitioner's appellate brief, or elsewhere in the record, suggests that these facts presented the "other crimes evidence" claim to the state courts as anything other than a common-law or statutory *Molineux*-type claim.

Petitioner has therefore failed to meet the criteria for fair presentation of the constitutional basis for his "other crimes evidence" claim to the state courts.

## CONCLUSION

For the reasons stated above, the petition should be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the Petitioner and the attorney for the Respondent.

**So Ordered.**