**Parramore Lee SANBORN Petitioner**

v.

**Philip PARKER Respondent**

No. CIV.A. 399CVP678C.

United States District Court,
W.D. Kentucky,
at Louisville.

Oct. 24, 2003.

Armand I. Judah, Louisville, KY, Milton C. Toby, Perce & Toby, Lexington, KY, for Plaintiff.

David A. Smith, Ian G. Sonego, Attorney General—Criminal Appellate Division, Frankfort, KY, Stephen P. Durham, Department of Corrections, Frankfort, KY, for Defendant.

## *ORDER*

MOYER, United States Magistrate Judge.

This matter is before the Court on Petitioner Parramore Lee Sanborn's ("Sanborn") motion for leave to conduct discovery. (DN 101) Respondent Philip Parker (hereinafter "Commonwealth") has filed a memorandum in opposition thereto. (DN 102). The Court, having examined each request in light of the applicable standard of review, concludes that Sanborn has failed to make a sufficient factual showing to establish "good cause." Thus, his requests for further discovery in this matter must be denied.

### I. STANDARD OF REVIEW

The U.S. Supreme Court promulgated rules to govern the practice of habeas corpus proceedings as a direct result of its decision in *Harris v. Nelson,* 394 U.S. 286, 300 n. 7, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) (recommending that "the rule-making machinery ... be invoked to formulate the rules of practice with respect to federal

habeas corpus ... proceedings"). Unlike typical civil litigants, "a habeas petitioner ... is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); *see also Harris*, 394 U.S. at 295–96, 89 S.Ct. 1082. Rather, whether a habeas petitioner is entitled to discovery is analyzed in light of Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts, which specifically provides:

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

In *Bracy*, the Supreme Court set forth the proper procedure for analyzing a habeas petitioner's discovery request. The first step of the analysis requires the reviewing court to "identify the 'essential elements' of that claim." *Bracy*, 520 U.S. at 904, 117 S.Ct. 1793. The reviewing court then examines the facts alleged to support the discovery request in light of the particular elements of the claim. *Id.* at 904–09, 117 S.Ct. 1793.

> [W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

*Bracy*, 520 U.S. at 908–09, 117 S.Ct. 1793 (quoting *Harris*, 394 U.S. at 300, 89 S.Ct. 1082). For example, in *Bracy*, the habeas petitioner sought discovery to support his claim that the trial judge was biased. After examining the particular facts surrounding the petitioner's trial and conviction, subsequent events (including the subsequent bribery conviction of the presiding judge), and the particular facts asserted in Bracy's request for discovery, the Supreme Court concluded that Bracy had shown "good cause" for further discovery. *Id.* While it did concede that Bracy's particular theory was speculative, it nevertheless was convinced that discovery was warranted because Bracy had presented additional evidence to justify the discovery request:

> Were it possible to indulge this presumption here, we might well agree with the Court of Appeals that petitioner's submission and his compensatory-bias theory are too speculative to warrant discovery. But, unfortunately, the presumption has been soundly rebutted: Maloney [the presiding judge] was shown to be thoroughly steeped in corruption through his public trial and conviction. We emphasize, though, that petitioner supports his discovery request by pointing not only to Maloney's conviction for bribe taking in other cases, but also to additional evidence, discussed above, that lends support to his claim that Maloney was actually biased in petitioner's own case. That is, he presents "specific allegations" that his trial attorney, a former associate of Maloney's in a law practice that was familiar and comfortable with corruption, may have agreed to take this capital case to trial quickly so that petitioner's conviction would deflect any suspicion the rigged Rosario and Chow cases might attract. It may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support a finding of actual judicial bias in the trial of his case, but we hold that he has made a sufficient showing, as required by Habeas Corpus Rule 6(a), to establish "good cause" for discovery. Although, given the facts of this particular case, it would be an abuse of discretion not to permit any discovery, Rule 6(a) makes it clear that the scope and extent of such

discovery is a matter confided to the discretion of the District Court. *Bracy*, 520 U.S. at 909, 117 S.Ct. 1793. A petitioner may seek discovery "to develop those claims which are properly before the court, to obtain a factual basis on which to excuse procedural default, or to determine whether to request an evidentiary hearing." *Payne v. Bell*, 89 F.Supp.2d 967, 970 (W.D.Tenn.2000). A petitioner, however, may not use Rule 6 to "embark on a fishing expedition intended to develop claims for which there is no factual basis." *Id.* (citing *Calderon v. U.S. Dist. Ct. For N.D.Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996)).

## II. ANALYSIS

Sanborn seeks leave to conduct discovery with respect to five claims. In some instances he seeks deposition testimony; in others, he seeks production of and/or access to particular documents.[1] Sanborn's various discovery requests will be analyzed in accordance with the principles and procedures outlined above.

### A. Reverend Barclay Brown

In Sanborn's second[2] and fifth[3] grounds for relief, he claims that he was denied due process of law as a result of Rev. Barclay Brown's testimony. With respect to the second ground, Sanborn claims that Rev. Brown was recruited by defense counsel as a possible mitigation witness and as a spiritual counselor for Sanborn. Thus, his testifying at the second trial violated both the attorney-client and clergy-penitent privileges. With respect to the fifth ground, Sanborn claims that his confession to Rev. Brown without corroboration was not sufficient to prove the underlying felonies of rape and sodomy, aggravating factors, which made Sanborn eligible for the death penalty.

Sanborn seeks to take Rev. Brown's deposition; he also seeks production of certain documents. The Court will separately address the requests for discovery in light of the underlying claims to which they relate.

### (1) Testimony violated attorney-client and clergy-penitent privileges and deprived him of due process

The trial court and ultimately the Kentucky Supreme Court disagreed with Sanborn's claim that Rev. Brown's testimony violated the attorney-client and priest-penitent privileges. The Kentucky Supreme

1. With respect to Sanborn's claim that counsel was ineffective with respect to the use of Dr. Johnson as an expert witness, Sanborn did not specify what type of discovery he sought. A reading of his request reveals that Sanborn apparently seeks to take the deposition of Dr. Johnson.

2. Sanborn's second ground for relief is set forth in Argument V of his supporting memorandum. (DN 35, Mem., pp. 31–38). There, he did not limit his claim to a violation of due process. Rather, he also argued that Rev. Brown's testimony violated the attorney-client and clergy-penitent privileges in addition to the Fifth, Sixth and Fourteenth Amendments. And in Sanborn's Traverse, he claimed that the admission of the testimony supports his claim of ineffective assistance of counsel. (DN 58, Traverse, p. 34).

3. Sanborn's fifth ground for relief is set forth in Argument XII of his supporting memorandum. (DN 35, Mem., pp. 64–70). There, he claimed the Commonwealth failed to prove him guilty of rape and sodomy beyond a reasonable doubt. Specifically, he argued that the uncorroborated confession to Rev. Brown cannot sustain his convictions. His convictions, thus, violated his rights to due process of the law.

Sanborn also argued that there was insufficient evidence at Sanborn's *first* trial to convict him of rape and sodomy. He claimed that the trial court should have granted his motion for a directed verdict at the first trial, thereby preventing a retrial on these claims. Sanborn's discovery request, however, does not relate to this particular argument.

Court found that there were no confidential communications between Rev. Brown and Sanborn that were protected by either privilege. *Sanborn v. Commonwealth*, 892 S.W.2d 542, 549–50 (Ky.1994). The Kentucky Supreme Court did not address a claim that the admission of the evidence violated the Due Process Clause.

The Commonwealth objects to Sanborn's discovery requests and argues that decisions involving state evidentiary privileges are not reviewable by federal courts in a habeas corpus proceeding. It also argues that there was no federal rule in existence at the time that recognized an evidentiary privilege for statements made to an expert for purpose of testifying at trial. Finally, it points out that defense counsel had an opportunity to subject Rev. Brown to extensive cross-examination at the pre-admissibility hearing.

 Before determining whether Sanborn is entitled to discovery, the Court must first examine the essential elements of the underlying claim. Generally, state evidentiary rulings are not matters for federal habeas review. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.2000) (citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)). There is an exception, however, if the state court's rulings deprive a defendant of a fundamentally fair trial in violation of the Due Process Clause. *Cooper*, 837 F.2d at 286; *see also Seymour*, 224 F.3d at 552 ("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' ") (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (citations omitted)).

The problem posed by this particular discovery request is that Sanborn makes only summary references to federal constitutional violations in his direct appeal and makes no reference to this specific issue in his state court collateral attack.[4] This passing reference may not establish that he fairly presented these particular federal claims to the state courts for review. *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir.1987);[5] *see also Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir.1984) ("[A] mere statement that 'due process' rights have been violated does not necessarily give rise to a specific federal constitutional claim [as] '[d]ue process,' like 'fair trial,' can be a catchphrase used by habeas petitioners as part of an allegation about any type of trial court error, including errors in rulings based on state law."). This is especially true where, as here, Sanborn premised the

---

4. On direct appeal, Sanborn argued that the "trial court ... violated appellant's constitutional rights and statutory privileges by permitting Reverend Brown, a member of the defense team at Appellant's first trial, to testify for the prosecution on retrial." *Sanborn v. Com.*, 91–SC–501–MR (Appellant's Br., p. 20). This particular argument was further divided into three principal arguments: (1) Rev. Brown's testimony violated the attorney-client privilege; (2) Rev. Brown's testimony violated the clergy-communicant privilege; and (3) Rev. Brown's testimony amounted to incompetent hearsay.

 Appellant concluded each argument by stating that the use of his statements violated his rights under the following amendments: First, Fifth, Sixth, Eighth and/or Fourteenth. *Id.* at 27, 30, and 32.

5. The Sixth Circuit stated:

 To fairly present his constitutional argument to the state courts required more than the use of a generalized catch-all phrase which merely alleged the deprivation of a fair trial under the United States Constitution. Such a catch-all provision does not adequately apprise the state courts of the constitutional theory to be relied upon at appellate review, especially under circumstances where the only legal theory presented to the state courts was predicated entirely upon state evidentiary law

 *Franklin*, 811 F.2d at 326.

entire argument in his direct appeal on the purported erroneous evidentiary rulings made by the trial court and devoted very little argument, if any, to the purported federal constitutional claims.

■ Assuming for purposes of this analysis only that the fair trial and due process claims are properly before the Court, Sanborn has not shown good cause for granting the discovery he now seeks. He has not set forth any specific allegations of fact which, if more fully developed, would show he is entitled to relief. Sanborn seeks to take the deposition of Rev. Brown because he needs "a clear understanding of Rev. Brown's status during the first trial, either as a clergyman or as a member of the defense team, or both, to fully adjudicate this claim." (DN 101, p. 2).[6] At oral argument, counsel said that discovery may lead to facts vital to the Court's determination of this issue. However, before Rev. Brown testified at Sanborn's retrial, defense counsel was given the opportunity to cross-examine him with respect to the nature of his relationship with Sanborn. During that hearing, counsel explored in detail Rev. Brown's roles as clergyman and member of the defense team. The magistrate judge has reviewed the transcript of the pre-admissibility hearing at the second trial and finds that the trial judge allowed extensive examination of Rev. Brown.

Here, Sanborn proposes to do nothing more than engage in ill-defined, open-ended discovery in the hope he might elicit a different response from this particular witness with questions posed by different counsel. An attempt simply to repeat the prior inquiry, without some particularized showing, is not adequate. Such is not a proper use of Rule 6's discovery tools.

Because Sanborn has failed to set forth the requisite "specific allegations" to establish "good cause," his request to take the deposition of Rev. Brown with respect to these claims is **DENIED**.

## (2) Uncorroborated confession was insufficient to convict Sanborn of rape and sodomy

■ Sanborn also claims that he was deprived of due process because there was insufficient evidence to convict him of rape and sodomy. Specifically, he claims that the Commonwealth relied on the testimony of Rev. Brown, who testified that Sanborn stated the victim was screaming when he sexually assaulted her. Sanborn claims that the Commonwealth had no other corroborating evidence, and his out-of-court confession to Rev. Brown cannot sustain these convictions.

At the pretrial hearing, Rev. Brown testified that he had taken notes of conversations with Sanborn. While Rev. Brown possessed a synopsis based upon his notes, he testified that he had lost the actual notes in a move. (Tr. 3/25/92, 3/26/91, 3/27/91, p. 84). At Sanborn's retrial, Rev. Brown testified from the synopsis. Sanborn seeks leave to take the deposition of Rev. Brown because "[t]here never has been a full accounting of the circumstances under which Rev. Brown obtained the incriminating statements from Sanborn." (DN 101, p. 3). Sanborn also seeks production of notes made by Rev. Brown "either contemporaneously while he was ministering to Sanborn or later." The notes, Sanborn maintains, may "contain exculpatory evidence or other information useful to the defense." *Id.* Finally, Sanborn seeks a copy of a letter (and notes related thereto) Rev. Brown submitted to Asbury

---

6. In his original motion in which he sought to take the deposition of Rev. Brown, Sanborn also claimed that Rev. Brown must be examined in light of an affidavit of Rev. Dianne Reistroffer, which makes clear that Rev. Brown violated his duties as a clergyman by testifying against Sanborn. (DN 66, p. 2).

Theological Seminary in which Sanborn is the subject.

■ To determine whether Sanborn is entitled to discovery, the Court first turns to the elements of the underlying claim itself. Citing federal case law, Sanborn claims that without corroboration, his out-of-court confession cannot sustain his conviction. Thus, he was denied due process of the law. However, the Sixth Circuit has recognized that while federal courts require such corroboration, there is nothing in the federal constitution that mandates state courts apply the same rule. *Williams v. Chapleau,* No. 97–6015, 2000 WL 32015 (6th Cir. Jan.4, 2000) (where petitioner argued that the trial court should have applied a Kentucky criminal rule (RCr 9.60) that precludes conviction on the basis of an uncorroborated extrajudicial confession). Thus, claims that a state prisoner's out-of-court admissions are insufficient to support a conviction are evaluated under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In *Jackson,* the Supreme Court held that a federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt but emphasized:

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve con-

flicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 318–319, 99 S.Ct. 2781 (citations omitted). The Supreme Court specifically stated that "the standard announced ... does not permit a court to make its own subjective determination of guilt or innocence [and] does not require scrutiny of the reasoning process actually used by the factfinder—if known." *Id.* at 320, n. 13, 99 S.Ct. 2781.

With respect to Sanborn's request for discovery, he alleged no facts or evidence that supports his claim that no trier of fact could have found beyond a reasonable doubt the essential elements of the crimes for which he was convicted. He merely speculates that further questioning of Rev. Brown and review of notes that no longer exist might turn up exculpatory evidence. He also believes such questioning might offer a full accounting of the circumstances under which the statements were made. Again, his requests rest on speculation as to what might possibly be gleaned if he were given the opportunity to conduct discovery. Because he failed to demonstrate a concrete, particular need or to establish "good cause," Sanborn's request for further discovery with respect to this claim is **DENIED**.

**B. Rodney Tingle**

■ In Sanborn's eighth ground for relief,[7] he claims he was denied due process of law and effective assistance of counsel in relation to the testimony of a prosecution witness, James Tingle. Sanborn claims "at the last minute" the Commonwealth called Rodney Tingle as its next-to-last witness. (DN 35, Pet., ¶ G). Sanborn was not provided with any personal information

---

7. Sanborn's eighth ground for relief is set forth in Argument XI of his supporting memorandum. There, he proffered one argument only, that counsel was ineffective for failing to move for a continuance.

on this witness until the night before Tingle testified. (DN 101, p. 4).

Tingle was incarcerated with Sanborn at the time of Sanborn's first trial and testified at the retrial that Sanborn said "I have killed once but they cannot kill me but once." *Sanborn v. Commonwealth,* 892 S.W.2d 542, 552 (Ky.1994). In the memorandum in support of Sanborn's habeas petition, he notes that his defense counsel was given an opportunity to cross-examine Tingle outside the presence of the jury prior to Tingle's direct testimony and that counsel asked questions regarding Tingle's pending and possible criminal charges in addition to his relationship with the victim's niece. However, Sanborn argues that his counsel should have sought a continuance to undertake a more thorough investigation of Tingle and the circumstances surrounding the incident about which he testified. Because Sanborn was not given adequate notice of the prosecution's intention to call Tingle as a witness and because he claims that defense counsel was ineffective for failing to request a recess or continuance of his trial in order to investigate possible impeachment evidence of Tingle, he seeks to take Tingle's deposition. Sanborn seeks leave to take Tingle's deposition "for the purpose of fully investigating the circumstances surrounding the events that formed the basis of his testimony . . . ." (DN 101, p. 4).

The Commonwealth objects to the discovery request, noting that Tingle admitted on direct examination that he had been arrested for public intoxication and possession of marijuana. He testified to convictions for public intoxication, DUI, and possession of marijuana. And in a hearing held outside the presence of the jury, defense counsel was given an opportunity to question Tingle further on his criminal history. Finally, the Commonwealth notes that the state trial court conducted an evidentiary hearing on Petitioner's 11.42 motion and no evidence was presented to establish that counsel was ineffective with respect to Tingle's testimony. Thus, the claim is procedurally defaulted.

To determine whether Sanborn is entitled to conduct further discovery with respect to this claim, the Court turns to the elements of the claim itself. The standard for reviewing a claim of ineffective assistance of counsel is set forth in the seminal case, *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth the following two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. 2052. With respect to the first prong, the Court further opined:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)) (internal citations omitted). And with respect to the second prong, the Court stated that a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

While it is true that defense counsel has a duty to make "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052, Sanborn has not pointed to any facts that if more fully developed, would show that his counsel was ineffective. He offers no evidence and proffers no particular theory to support his claim that there is a reasonable probability that the result would have been different had counsel requested a continuance to investigate Tingle more thoroughly. Rather, he offers nothing more than speculation that something might show up that would cast aspersions on Tingle's credibility should he be given a second chance to question him. It has been nearly twelve years since Tingle testified. And in that time, Sanborn has un-covered not a scintilla of evidence to show that had counsel requested a continuance, he would be entitled to the relief he now seeks. Sanborn's request to take Tingle's deposition is **DENIED**.

## C. DPA Records

In Sanborn's sixth ground [8] for relief, he sets forth three arguments to show how the Kentucky Department of Public Advocacy ("DPA") denied him effective assistance of counsel. Specifically, he claims that DPA (1) failed to assign two attorneys to defend him at the retrial; (2) failed to provide adequate and conflict-free investigatory services; and (3) failed to provide adequate funding. Sanborn's discovery request arises from his third claim.

Sanborn claims that DPA failed to provide adequate funding for his defense, funded some death penalty cases adequately while ignoring others (including his), and that his defense suffered due to this disparate funding. (DN 101, p. 5). He states that while the Franklin Circuit Court directed the DPA to provide its funding records to Sanborn as a result of his open records request, it has not done so. Sanborn claims that "without this information, it is impossible to fully adjudicate Sanborn's claim that his defense was prejudiced by the DPA's funding practices." (DN 101, p. 5). Thus, he seeks an order directing DPA to provide this information.

Respondent objects to the discovery request claiming, in part, that the issue is procedurally defaulted. The Kentucky Supreme was not presented with this claim on direct appeal or collateral review. He also claims that the DPA's policies and procedures are a matter of state law, which is not reviewable in a federal habeas

---

**8.** Sanborn's sixth ground for relief is set forth in Argument VIII of his supporting memoran-dum. (DN 35, Mem., pp. 51–55)

action. The Commonwealth further notes that Sanborn's open records request was not filed until after he filed the instant action under review.

██ The Court will not repeat the essential elements of an ineffective assistance of counsel claim. Having considered this particular discovery request in light of the elements of the constitutional claim asserted, the Court concludes that Sanborn has not shown "good cause" to justify the discovery request. Nowhere does he point to "specific allegations" that if more fully developed would show that he was denied effective assistance of counsel because of DPA's funding or lack thereof. What he offers the Court is nothing more than his speculation that DPA might have underfunded his defense and, if this proves to be true, he was denied ineffective assistance of counsel. However, his speculation, without more, is simply insufficient to warrant further discovery. His motion for discovery with respect to this claim is **DENIED.**

## D. Dr. Philip Johnson

██ In Sanborn's first ground for relief,[9] he claims that he was denied effective assistance of counsel with respect to presentation of his defense of extreme emotional disturbance ("EED").[10] Specifically, his ineffective assistance of counsel claim charges his counsel with "failing to realize that the testimony of expert witness Dr. Phillip W. Johnson, would not be admissible at the guilt phase of the trial." (DN

35, Mem., p. 10). During the guilt phase of Sanborn's retrial, the trial court did not permit Dr. Johnson to testify to statements made by Sanborn, ruling such constituted impermissible hearsay. Sanborn claims that counsel "was ineffective at every step in preparing expert testimony to support the defenses of EED and intoxication." (DN 58, Traverse, p. 19).

Sanborn claims that further discovery is necessary (1) to show Dr. Johnson's bias because he had a conflict of interest in that he had previously examined Sanborn as a neutral expert; and (2) to show how that bias "may have affected his evaluation of Sanborn for the second trial in that he [*i.e.*, Dr. Johnson] did not fully understand his role as a defense expert." (DN 101, p. 8). Sanborn elsewhere states "discovery is required to determine *whether there was any bias* on Dr. Johnson's part...." *Id.* at p. 9 (emphasis added).

Having examined this particular discovery request in light of the essential elements of an ineffective assistance of counsel claim, the Court is hard-pressed to see the connection between Dr. Johnson's alleged bias and this particular claim. Nowhere does Sanborn set forth specific allegations to support his claim of Dr. Johnson's bias. Rather, he offers the Court nothing more than his belief that he needs discovery because Dr. Johnson *might have been biased.* He further claims that *if Dr. Johnson were biased when he evaluated Sanborn,* then defense counsel *should have known* about the

---

9. Sanborn's first ground for relief is set forth in Argument I of his supporting memorandum.

10. In Sanborn's Traverse, he states "[t]rial counsel was ineffective in failing to prepare the defenses of extreme emotional disturbance and intoxication." (DN 58, Traverse, p. 18).

Sanborn sets forth another claim with respect to Dr. Johnson's testimony. In Argument II of his supporting memorandum (the claim is not identified in the petition itself), Sanborn claims that he was denied his right to a fair trial and to due process of the law when the trial court did not allow Dr. Johnson to testify as to Sanborn's mental state at the trial in chief. Sanborn's discovery request, however, does not relate to this particular claim.

bias. And *if counsel did not know about the potential for bias*, then Sanborn maintains counsel's failure to "perceive these problems" established that he was ineffective. Sanborn's discovery request is nothing more than a request to fish for evidence to support this particular claim. It does not, however, establish the requisite "good cause" to justify further discovery. The request is, therefore, **DENIED**.

For the reasons set forth above, Sanborn's request to conduct discovery in this matter must be denied.

**IT IS SO ORDERED.**