**UNITED STATES ex rel. Alex BLANKENSHIP, Petitioner,**

v.

**CIRCUIT COURT OF COOK COUNTY & Attorney General of the State of Illinois, Respondents.**

No. 98 C 7138.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 5, 1999.

---

Terry Sullivan, Nancy J. Nicol, Law Offices of Terry Sullivan, Ltd., Rolling Meadows, Illinois, for plaintiff.

Chief of Criminal Appeals, Russell K. Benton, Illinois Attorney General's Office, Chicago, Illinois, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are petitioner Alex Blankenship's (1) motion for limited discovery pursuant to Rule 6 of the Rules Governing § 2254 Cases in the United States District Courts and (2) petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the court denies petitioner's Rule 6 motion and § 2254 petition and dismisses this action with prejudice.

## I. BACKGROUND

Following a stipulated bench trial, petitioner Alex Blankenship ("Blankenship") was convicted in state court of one count of possession of a controlled substance with intent to deliver. On November 30, 1989, the Circuit Court of Cook County sentenced Blankenship to a six-year term of imprisonment.

Blankenship appealed his conviction, arguing that the circuit court erred in denying the motion to quash his arrest and motion to suppress evidence. (Resp't Answer Ex. A.) The Appellate Court of Illinois reversed Blankenship's conviction. (Id.) The Supreme Court of Illinois, however, reversed the appellate court's decision and reinstated the original conviction. (Resp't Answer Ex. B.)

On August 6, 1993, Blankenship filed in state court an amended petition for post-conviction relief pursuant to 725 ILL.COMP. STAT. § 5/122–1. Blankenship raised one issue in his post-conviction petition, which was whether the State of Illinois denied him due process of law by failing to comply with a cooperation agreement that Blankenship claimed the State had entered into with him. According to Blankenship, (1) the parties agreed that if Blankenship's cooperation with the State resulted in the consummation of three small drug transactions or one major transaction, then Blankenship would not receive jail time in his pending criminal charge and (2) he performed his obligations under the agreement by delivering to the federal government eight individuals involved in a Chicago-based cocaine conspiracy. After a full evidentiary hearing, the circuit court found that the State had terminated any attempt at an agreement with Blankenship, and he and his attorney were told as such in "no uncertain terms," before he went to trial, before he performed his end of the agreement, and before he started working with the federal authorities. (Resp't Ex. G. Vol. VI at 37–40.) Finding as such, the circuit court determined that it could not enforce an agreement that did not exist and, thus, denied Blankenship's post-conviction petition on its merits. (Id.)

Blankenship appealed to the Appellate Court of Illinois. The appellate court affirmed the circuit court's denial of his post-conviction petition. The appellate court identified the constitutional issue as being whether Blankenship's due process rights were violated. Addressing this issue, the appellate court found that (1) the threshold question on appeal was whether an enforceable agreement existed between Blankenship and the State; (2) the State was free to withdraw from the alleged agreement prior to Blankenship's performance or surrender of a constitutional right; and (3) Blankenship had failed to show that the circuit court's determination that there was no agreement at the time that Blankenship went to trial was contrary to the manifest weight of the evidence or an abuse of discretion. (Resp't Ex. D at 12–15.) Finding as such, the appellate court affirmed the circuit court's judgment. (Id. at 15.)

After the appellate court rejected his due process claim, Blankenship filed a pe-

tition in the Supreme Court of Illinois for leave to appeal the appellate court's decision. The Supreme Court of Illinois denied Blankenship's petition for leave to appeal. (Resp't Answer Exs. E–F.) Blankenship then filed a petition for a writ of certiorari with the Supreme Court of the United States, which was denied on October 5, 1998. (Pet.¶ 9.)

On November 6, 1998, Blankenship filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court, claiming that his sentence of imprisonment is unconstitutional because the State of Illinois deprived him of due process of law by failing to honor the cooperation agreement. In conjunction with his § 2254 petition, Blankenship filed a motion for limited discovery pursuant to Rule 6 of the Rules Governing § 2254 Cases in the United States District Courts. The court addresses petitioner's Rule 6 motion and § 2254 petition below.

## II. DISCUSSION

### A. Blankenship's motion for limited discovery under Rule 6

Blankenship has filed a motion for limited discovery pursuant to Rule 6 of the Rules Governing § 2254 Cases in the United States District Courts. In his motion, Blankenship requests leave to take the discovery deposition of Sergeant Pat Darcy of the Chicago Police Department. In support of his request, Blankenship states that he "believes that the deposition will lead to relevant information concerning the reasons the State of Illinois did not want to work with Petitioner and the identify [sic] of those individuals responsible for the instructions to ... cease working with Petitioner." (Pet'r Mot. for Limited Disc. ¶ 6.)

█ Unlike other civil litigants, a habeas petitioner is not entitled to discovery as a matter of course. *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); *Harris v. Nelson,* 394 U.S. 286, 295, 89 S.Ct. 1082, 22 L.Ed.2d

281 (1969). In pertinent part, Rule 6(a) of the Rules Governing § 2254 Cases in the United States District Courts provides: "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." R. Governing § 2254 Cases in the U.S.Dist. Cts. 6(a). Thus, in order for discovery to be granted in a habeas case, the petitioner must show good cause. *Bracy,* 520 U.S. at 904, 908, 117 S.Ct. 1793; *United States ex rel. Madej v. Gilmore,* No. 98 C 1866, 1999 WL 182150, at *1 (N.D.Ill. Mar.24, 1999). "Good cause" is shown "[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief...."*Id.* (quoting *Harris,* 394 U.S. at 299, 89 S.Ct. 1082); *see also Gibbs v. Johnson,* 154 F.3d 253, 258 (5th Cir.1998) (explaining that *Harris* led to the adoption of Rule 6 and Rule 6 is intended to be consistent with *Harris* ). A habeas petitioner may not use discovery for "fishing expeditions to investigate mere speculation." *Calderon v. U.S. Dist. Ct. for the N.D.Cal.,* 98 F.3d 1102, 1106 (9th Cir.1996); *see also Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir.1994).

█ The court finds that Blankenship has not shown "good cause" to take the deposition of Sergeant Darcy for three main reasons. First, under the facts of this case, the court finds that the State's reasons for not wanting to work with Blankenship are irrelevant to the court's analysis of the merits of Blankenship's constitutional claim. Second, Blankenship's allegation that he "believes" Sergeant Darcy has information related to the State's reasons is not sufficiently specific to warrant a finding of "good cause." Finally, it is undisputed that Blankenship's attorneys already had the opportunity to fully cross-examine Sergeant Darcy at the evidentiary hearing on Blankenship's post-conviction petition.

First, the State's reasons for not wanting to work with Blankenship are irrelevant to this court's analysis of the merits of Blankenship's constitutional claim. The ultimate resolution of Blankenship's due process claim hinges on whether there is a clearly established rule of federal law, as determined by the Supreme Court of the United States, that the State was not free to terminate or withdraw from the cooperation agreement. *See infra* Part II.C.2. For the reasons given in Part II.C.2, the court finds that there is no such clearly established rule of federal law and, thus, that Blankenship's petition should be denied. Accordingly, the court finds that the State's reasons for not wanting to work with Blankenship are irrelevant to this court's disposition of his § 2254 petition.

Moreover, even if the State's reasons were relevant to this court's analysis of the merits of Blankenship's constitutional claim, the court finds that Blankenship has failed to make the requisite "specific allegations" to support a finding of "good cause." In his motion, Blankenship states only that he *"believes* that the deposition will lead to relevant information concerning the reasons the State of Illinois did not want to work with Petitioner and the identify [sic] of those individuals responsible for the instructions to … cease working with Petitioner." (Pet'r Mot. for Limited Disc. ¶ 6 (emphasis added).) Blankenship gives no reason why he "believes" Sergeant Darcy would have such information. He has offered no evidence on the basis for his belief. There is nothing in the record that indicates that Sergeant Darcy possesses such information. Thus, Blankenship's allegations fall short of the requisite "specific allegations" needed to establish "good cause."

Finally, it is undisputed that Sergeant Darcy was a witness at the evidentiary hearing held on Blankenship's post-conviction petition. Blankenship's post-conviction petition raised exactly the same issue that has been raised in this § 2254 petition: whether the State violated Blanken-

ship's right to due process by not honoring the cooperation agreement. Attorneys Terry Sullivan and Nancy Nicol represented Blankenship at the evidentiary hearing. After the direct examination of Sergeant Darcy, Sullivan conducted the cross-examination of Sergeant Darcy, the transcript of which is twenty-seven pages long. With respect to this cross-examination, respondent states:

> What is not mentioned in petitioner's motion [for limited discovery] is that Sergeant Darcy gave extensive testimony at the post-conviction hearing. Such testimony included the very facts and issues that the petitioner wishes to depose Sergeant Darcy regarding now. Petitioner's counsel questioned him at length, at the hearing, and excused him when he ran out of questions. There is no legal reason that petitioner should be given a second chance to question Sergeant Darcy. No limitations were placed on the previous testimony, and it is obvious that petitioner is seeking the same information he received or could have received previously.

(Resp't Resp. to Mot. for Limited Disc. ¶ 4 (internal citations omitted).) Blankenship did not respond to respondent's position even though he was given the chance.

The court agrees with respondent's position. Sullivan conducted the cross-examination of Sergeant Darcy and was not prevented from questioning Sergeant Darcy about the State's reasons for not wanting to work with Blankenship or who it was that gave the orders not to work with Blankenship. Blankenship has given no reason, let alone a good reason, why he should be allowed to take the deposition of Sergeant Darcy after his attorney was allowed to fully cross-examine Sergeant Darcy at the evidentiary hearing. Accordingly, the fact that Blankenship's attorney has already had the opportunity to fully question Sergeant Darcy on the record and under oath counsels against Blankenship being allowed to take the deposition.

For the foregoing reasons, the court finds that Blankenship has failed to show "good cause" to take the deposition of Sergeant Darcy. Blankenship has failed to show that his request amounts to anything more than a fishing expedition. Accordingly, the court denies Blankenship's motion for limited discovery.

## B. *The need for an evidentiary hearing*

In his reply brief, Blankenship requested that this court delay its decision on the need for an evidentiary hearing until after the court ruled on Blankenship's motion for limited discovery.[1] (Pet'r Reply at 4.) The court granted Blankenship's request. (Ct. Order dated Mar. 29, 1999.) Having decided Blankenship's motion for limited discovery, the court must now decide whether an evidentiary hearing is needed in this case.

Rule 8 of the Rules Governing § 2254 Cases in the United States District Courts provides:

> If the petition is not dismissed at a previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require.

R. GOVERNING § 2254 CASES IN THE U.S.DIST. CTS. 8. Subsection (e)(2) of § 2254 provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In this case, the answer and the transcript and record of the relevant state court proceedings have been filed. Having reviewed the record in this case, the court finds that no evidentiary hearing is needed. The ultimate resolution of this petition depends on whether there was a clearly established rule of federal law that the State violates due process when it terminates a cooperation agreement with an individual before the individual has performed his end of the agreement. *See infra* Part II.C.2. This issue was decided in the state court proceedings, and no further evidence is needed or even warranted on this issue. *See* 28 U.S.C. § 2254(e)(2). Thus, because an evidentiary hearing is not required in this case, what remains for this court to do is to "make such disposition of the petition as justice shall require."

## C. *Blankenship's § 2254 petition*

Blankenship has raised one claim in his § 2254 petition, which is whether the State violated his right to due process by failing to honor the cooperation agreement. The court finds that Blankenship has fully exhausted his state court remedies with respect to this claim, (Resp't Answer ¶ 9), and has avoided procedurally defaulting this claim during the state court proceed-

---

1. Blankenship also requested the court delay its decision on the need for an evidentiary hearing until after the court ruled on Blank-

enship's motion to expand the record. Blankenship, however, never filed such a motion.

ings. *See Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir.1996). Accordingly, the court will address the merits of Blankenship's due process claim.

## 1. Standard of review

Blankenship filed his § 2254 petition after April 24, 1996; therefore, the current version of § 2254 governs this court's analysis. *Tenner v. Gilmore*, 184 F.3d 608, 610 (7th Cir.1999). With respect to a claim that was adjudicated on the merits in the state court proceedings, § 2254 provides that the court shall not grant a writ of habeas corpus unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

The court presumes that the state court's factual findings are correct unless the petitioner rebuts this presumption with clear and convincing evidence. § 2254(e)(1); *Gardner v. Barnett*, 175 F.3d 580, 582 (7th Cir.1999). "Under this presumption, if in state court the petitioner had a ' 'a full and fair hearing ... resulting in reliable findings,' the federal court 'ordinarily should ... accept the facts as found' by the state tribunal.' " *Crivens v. Roth*, 172 F.3d 991, 995 (7th Cir.1999) (quoting *Thompson v. Keohane*, 516 U.S. 99, 109, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). The court reviews the State court's legal determinations, as well as mixed questions of law and fact, de novo. *Gardner*, 175 F.3d at 582 (citing *Long v. Krenke*, 138 F.3d 1160, 1163 (7th Cir.1998)).

## 2. The merits of Blankenship's due process claim

Blankenship has raised one claim in his § 2254 petition, which is whether his due process rights were violated when the State failed to honor the cooperation agreement. This claim was adjudicated on the merits in the Illinois courts. Both the circuit court and the appellate court rejected his claim on its merits. Thus, this court cannot grant Blankenship's petition unless the court finds that the adjudication of his claim in the State court proceedings satisfies the requirements of either § 2254(d)(1) or § 2254(d)(2).

In this case, Blankenship never argues that his case falls within § 2254(d)(2). In fact, he never challenges the factual findings of the state courts in any way. He only argues that his claim falls within the "contrary to" clause of § 2254(d)(1). Accordingly, this court's discussion is limited to whether the requirements of § 2254(d)(1) are satisfied. *See Yancey v. Gilmore*, 113 F.3d 104, 106 (7th Cir.1997) ("As [petitioner] does not dispute the state court's factual findings, we discuss only § 2254(d)(1).").

Section 2254(d)(1) provides that an application for relief under § 2254 may not be granted unless the state court's adjudication of the petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Embodied in this language are two separate clauses: the "contrary to" clause and the "unreasonable application of" clause. *Lindh v. Murphy*, 96 F.3d 856, 869–70 (7th Cir.1996), *rev'd in part on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).[2] Each of these clauses requires a separate and distinct analysis. *United States ex rel. Santiago v. Page*, No. 96 C 8426, 1999 WL 299878, at *2 (N.D.Ill. May 4, 1999).

**2.** In *Holman v. Gilmore*, 126 F.3d 876, 880 (7th Cir.1997), the Seventh Circuit reaffirmed all aspects of *Lindh* except its holding regard-

ing retroactivity, which was the issue on which it was reversed by the Supreme Court.

■ The determination of whether the adjudication of the petitioner's constitutional claim in the state court proceedings resulted in a decision that was "contrary to" clearly established federal law is a question of law which the court must review de novo. *Lindh,* 96 F.3d at 868–70. In other words, a federal court reviews de novo whether a state court has deviated from the federal Constitution on legal issues. *United States ex rel. Santiago,* 1999 WL 299878.

■ The determination of whether a petitioner's constitutional claim in the state court proceedings resulted in a decision that involved an "unreasonable application of" clearly established federal law is a mixed question of law and fact. *Lindh,* 96 F.3d at 870. The "unreasonable application of" clause "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'" *Id.; see also Tenner v. Gilmore,* 184 F.3d 608, 614 (7th Cir.1999). A state court's decision is reasonable if it is "at least minimally consistent with the facts and circumstances." *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.1997).

■ In determining whether the petitioner's claim satisfies either clause of § 2254(d)(1), the court is limited to the application of Supreme Court precedent. *Lindh,* 96 F.3d at 868–69; *United States ex rel. Santiago,* 1999 WL 299878, at *2. Therefore, to show that a state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law," the § 2254 petitioner "must be able to point to an authoritative decision of the Supreme Court in order to secure a writ." *Id.* The § 2254 petitioner may no longer rely only on circuit court precedent to show that he is entitled to a writ of habeas corpus. *Yancey,* 113 F.3d at 106. In addition, the petitioner must be able to rely on a decision of the Supreme Court itself and not an extension of a Supreme Court decision. *See Lindh,* 96 F.3d at 869; *Evans v. McBride,* 94 F.3d 1062, 1064 (7th Cir.1996).

Blankenship argues that the adjudication of his due process claim resulted in a decision "contrary to" federal law because (1) "[t]he Appellate Court's holding that the State was free to withdraw from the agreement was contrary to federal law," (Pet'rs Reply at 3), and (2) "[t]he State court's decision is contrary to clearly established federal law ... that agreements between prosecutors and defendants are enforceable," (Pet'rs Memo. of Law at 3). In support of his claim, Blankenship relies on two Supreme Court cases: *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

To determine whether *Santobello* and *Mabry* are "authoritative decisions" of the Supreme Court which support Blankenship's claim, the court must identify the precise issue before the court and analyze whether the decisions clearly establish a rule that is determinative of that issue. To do this, the court will first identify what the precise issue before the court is. The court will then discuss the facts, holding, and reasoning of the *Santobello* and *Mabry* decisions. Finally, the court will analyze those cases and determine whether they clearly establish a rule which decides the issue in this case.

### a. The issue presented by this case

The court must first specify what the precise issue before the court is. To do so, the court must first specify what is not in dispute. There is no dispute that the State had terminated any agreement or attempt at an agreement before Blankenship went to trial, before he performed his end of the agreement, and before he cooperated with the federal authorities. There is also no dispute that Blankenship and his lawyer were told "in no uncertain terms" that there was no agreement before Blankenship went to trial, before he performed his end of the agreement, and before he cooperated with the federal authorities.

The state courts made such factual findings in the state court proceedings, and Blankenship has not argued, and the court does not find, that these factual findings were unreasonable in light of the evidence presented. *See* § 2254(d)(2). Further, Blankenship has made no attempt to present clear and convincing evidence to rebut the presumption of correctness of these factual findings. *See* § 2254(e)(1).

Given that there is no dispute that the State had terminated the cooperation agreement before Blankenship went to trial, before he performed his end of the agreement, and before he cooperated with the federal authorities, the only way that Blankenship can argue that he was denied due process by the State's failure to honor the cooperation agreement is if the State was not free to terminate or withdraw from the cooperation agreement. Thus, the precise issue before the court is whether *Santobello* and/or *Mabry* clearly establish that the State violates due process when it withdraws or terminates a cooperation agreement with an individual before the individual performs his end of the agreement.

### b. The *Santobello* and *Mabry* decisions

In *Santobello*, the defendant pleaded guilty pursuant to a plea agreement with the State. *Santobello*, 404 U.S. at 258, 92 S.Ct. 495. Pursuant to the plea agreement, the State agreed to allow the defendant to plead guilty to a lesser included offense and to make no recommendation as to the sentence. *Id.* At the defendant's sentencing, a new prosecutor replaced the prosecutor who had negotiated the plea. *Id.* at 259, 92 S.Ct. 495. The new prosecutor recommended the maximum sentence. *Id.* Defense counsel objected on the ground that the prosecutor had promised in exchange for the guilty plea to make no sentence recommendation. *Id.* The judge imposed the maximum sentence, stating that the prosecutor's recommendation

made no difference in his determination. *Id.*

The Supreme Court granted certiorari in *Santobello* in order to decide the question of "whether the State's failure to keep a commitment concerning the sentence recommendation on a guilty plea required a new trial." *Santobello*, 404 U.S. at 257–58, 92 S.Ct. 495. The Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. 495. The Court then remanded the case to the state court to determine whether the defendant was entitled to specific performance of the plea agreement or to the relief sought by the defendant, which was to withdraw his guilty plea.

*Mabry* was decided thirteen years after *Santobello*. In *Mabry*, the defendant accepted an offer made by the prosecution regarding a possible plea agreement. *Mabry*, 467 U.S. at 506, 104 S.Ct. 2543. After defense counsel communicated the defendant's acceptance to the prosecutor, the prosecutor informed defense counsel that a mistake had been made and withdrew the offer. *Id.* The prosecutor then made a new offer, which the defendant rejected, electing instead to stand trial. *Id.* On the second day of the defendant's trial, the trial judge declared a mistrial and plea negotiations resumed. *Id.* The defendant then accepted the prosecutor's second offer. *Id.*

The Supreme Court granted certiorari in *Mabry* to decide "whether a defendant's acceptance of a prosecutor's proposed plea bargain creates a constitutional right to have the bargain specifically enforced." *Id.* The Court held that it did not. The Court explained:

A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected in-

terest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.

*Id.* at 507–08, 104 S.Ct. 2543. The Court recognized that when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise. *Id.* at 509, 104 S.Ct. 2543. In this case, however, the Court found that the defendant's guilty plea was in no sense induced by the prosecutor's withdrawn offer; rather, the defendant was fully aware when he pleaded guilty that the prosecution had withdrawn the offer. *Id.* at 510, 104 S.Ct. 2543. Finally, the Court noted that "the question whether the prosecutor was negligent or otherwise culpable in first making and then withdrawing his offer" is without constitutional significance, explaining that "[t]he Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty." *Id.* at 510–11, 104 S.Ct. 2543. The Court found that the defendant "was fully aware of the likely consequences when he pleaded guilty [and] it is not unfair to expect him to live with those consequences now." *Id.* at 511, 104 S.Ct. 2543.

c. **Whether *Santobello* and *Mabry* clearly establish that the State violated due process by terminating the cooperation agreement**

The court must now determine whether *Santobello* and *Mabry* clearly establish that the State violates due process when it withdraws from a cooperation agreement with an individual before the individual has performed his end of the agreement. For the following reasons, the court finds that neither *Santobello* nor *Mabry* clearly establishes such a rule.

The most glaring problem with Blankenship's attempt to use *Santobello* and *Mabry* to support his claim is that neither *Santobello* nor *Mabry* dealt with cooperation agreements. Both cases concerned a plea agreement, which is a wholly different type of agreement. Blankenship did not cite, and the court could not find, a Supreme Court case which extended the holdings of either *Santobello* or *Mabry* to include cooperation agreements. Such an extension by the Supreme Court is needed in order for Blankenship to rely on these cases in support of his claim. *See* § 2254(d)(1).

Recognizing that the Supreme Court has never extended the holdings of *Santobello* or *Mabry* to include cooperation agreements, Blankenship cites the Ninth Circuit's decision in *United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir.1983), for the proposition that "[a] cooperation agreement is analogous to a plea agreement." (Pet'r Memo. of Law at 2.) There are two basic problems with Blankenship's reliance on *Carrillo*. First, as is obvious, *Carrillo* is a circuit court case and is not a Supreme Court decision. Second, Blankenship has taken the Ninth Circuit's statement out of context. In finding that a cooperation agreement is analogous to a plea agreement, the Ninth Circuit was explaining that these agreements may be analyzed in terms of contract law standards. *Carrillo*, 709 F.2d at 36. The Ninth Circuit was not addressing whether both types of agreements have the same constitutional implications and was in no way discussing whether the holdings of either *Santobello* or *Mabry* should be extended to include cooperation agreements.

The second problem with Blankenship's attempt to use *Santobello* and *Mabry* to support his claim is that even if those cases were extended to include cooperation agreements, neither case can be fairly read as establishing a rule that the State violates due process when it withdraws from a cooperation agreement with an individual before that individual performs under the agreement. Quite to the contrary, the *Mabry* Court stated that "a plea bargain standing alone is without constitu-

tional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest" and that it is only an "executed plea agreement" that implicates the Constitution. *Mabry*, 467 U.S. at 507–09, 104 S.Ct. 2543. Similarly, when a defendant has not performed under a cooperation agreement, the cooperation agreement is only an executory agreement which has no constitutional significance.

 In this case, there is no dispute that the State withdrew from the cooperation agreement before Blankenship had performed his end of the agreement, before he went to trial, and before he cooperated with the federal authorities. Thus, the cooperation agreement was an executory, not executed, agreement at the time that the State withdrew. Accordingly, even if *Santobello* and *Mabry* covered such an agreement, under the rules announced in those cases, the State did not violate due process when it terminated the executory cooperation agreement. Thus, the state court's decision that the State was free to withdraw from the agreement was not contrary to or an unreasonable application of federal law.

Blankenship attempts to argue that the cooperation agreement does have constitutional significance because he surrendered his Fifth Amendment right against self-incrimination because while working with State authorities, he admitted to the authorities that he had continued to work with a major drug dealer after he had been arrested. The state court made a factual finding, however, that Blankenship "had failed to show that the State used any statement he made in the course of his efforts to cooperate (or the fruits thereof) against him in any criminal prosecution." (Resp't Ex. D at 14.) Blankenship has not disputed this factual finding in any way. Thus, Blankenship was not deprived of any liberty interest based on his statements. Further, there is no evidence that Blank-

enship was required to surrender his Fifth Amendment rights under the terms of the cooperation agreement. Thus, even if Blankenship did make some incriminating statements while working with the authorities, that does not turn the executory cooperation agreement into an executed cooperation agreement.

In sum, Blankenship has failed to show that the state court's decision was "contrary to, or involved an unreasonable application of Federal law, as determined by the Supreme Court of the United States." Blankenship has not identified a Supreme Court decision which supports his claim. The only two cases which Blankenship has identified, *Santobello* and *Mabry*, do not support his claim. It may be that when the Supreme Court finally considers the question at issue here the Court will hold that a State violates an individual's right to due process when it terminates a cooperation agreement with an individual in circumstances such as those presented by this case. However, the Supreme Court has not yet so held. Further, even if *Santobello* and *Mabry* did govern the issue in this case, the court finds that the state court's decision was neither contrary to nor an unreasonable application of those cases. Accordingly, Blankenship cannot satisfy the requirements of § 2254(d)(1) and, thus, this court "shall not" grant his petition for a writ of habeas corpus.

## III. CONCLUSION

For the foregoing reasons, the court denies petitioner Alex Blankenship's (1) motion for limited discovery pursuant to Rule 6 of the Rules Governing § 2254 Cases in the United States District Courts and (2) petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Accordingly, the court dismisses this case with prejudice.