Pervis T. PAYNE, Petitioner,

v.

Ricky BELL, Warden, Respondent.

No. 98–2963 Ml/Bre.

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 15, 2000.

---

J. Brook Lathram, Les Jones, Burch Porter & Johnson, Memphis, Todd Allen Rose, Burch Porter & Johnson, Paris, Nashville, TN, Christopher M. Minton, Post Conviction Defender, Nashville, TN, for Pervis T. Payne, petitioner.

Glenn R. Pruden, Office of Attorney General, Nashville, TN, Tonya Miner, Attorney General Office, Nashville, TN, for Ricky Bell, Warden, respondent.

ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION AND SUPPLEMENTAL MOTION FOR LEAVE TO CONDUCT DISCOVERY AND FOR SUPPORT SERVICES

McCALLA, District Judge.

Before the Court is Petitioner's Motion for Leave to Conduct Discovery and Supplemental Motion for Leave to Conduct Discovery and for Support Services. The Court will consider these two motions together. For the reasons stated below, the Court DENIES IN PART and GRANTS IN PART these motions.[1]

1. Petitioner also makes certain discovery requests in his Response to Warden Bell's motion for Summary Judgment. The Court addresses these issues in this Order.

## I. Background

Petitioner seeks several types of discovery for a variety of different purposes. In his Motion for leave to Conduct Discovery (filed May 14, 1999), Petitioner requested the Court's permission to serve interrogatories, obtain certain documents, and depose two individuals. In this demand for documents, Petitioner also requested the arrest file of Barry Wiggins. The request for the Wiggins evidence was also made in Petitioner's Response to Warden's Motion for Summary Judgment. In his Supplemental Motion for Leave to Conduct Discovery and for Support Services (filed September 24, 1999), Petitioner requested that the government make available all vaginal swabs taken from the adult victim, Charisse Christopher, for purposes of DNA testing to be compared with a sample from Mr. Payne.

## II. Discussion

■ Rule 6(a) of the Special Rules Governing Section 2254 cases ("Habeas Rules") states that a habeas petitioner "shall be entitled to invoke the process of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so." Good cause exists where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *See Harris v. Nelson,* 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969); *Lynott v. Story,* 929 F.2d 228, 232 (6th Cir.1991). Petitioner need not show that the additional discovery would definitely lead to relief. Rather, he need only show good cause that the evidence sought would lead to relevant evidence regarding his petition. However, vague and conclusory assertions are not sufficient under Rule 6 and a petitioner may not embark on a fishing expedition intended to develop claims for which there is no factual basis. *See Calderon v. U.S. Dist. Ct. for N.D. Cal.,* 98 F.3d 1102, 1106 (9th Cir.1996).

Once good cause is shown, a habeas petitioner may avail himself of the discovery procedures permitted by the Federal Rules of Civil Procedure, including the use of interrogatories, depositions, document requests, and requests for tangible evidence. A habeas petitioner may seek discovery under Rule 6(a) in order to develop those claims which are properly before the court, to obtain a factual basis on which to excuse procedural default, or to determine whether to request an evidentiary hearing.

■ Respondent opposes all of these discovery requests. Warden Bell appears to conflate the standard for granting discovery under Rule 6(a) with the standard for granting an evidentiary hearing under § 2254(e). According to Respondent, if Mr. Payne is not entitled to an evidentiary hearing, there is no reason to grant a Rule 6(a) motion. Respondent's argument is flawed because an evidentiary hearing may not be the ultimate goal of a petitioner's discovery motion. *See, e.g., Jones v. Wood,* 114 F.3d 1002, 1009 (9th Cir.1997) (holding that "discovery is available to habeas petitioners at the discretion of the district court judge for good cause shown, regardless of whether there is to be an evidentiary hearing"). Indeed, the Supreme Court has noted with approval the Advisory Committee's suggestion that there may be instances in which discovery prior to an evidentiary hearing would be beneficial and might obviate the need for such a hearing. *See Blackledge v. Allison,* 431 U.S. 63, 81, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Conflating the standard would prevent a habeas petitioner from obtaining discovery that could be used to bolster claims in his petition, to justify relief without a hearing, or to explain why certain defaulted claims should nevertheless be heard on the merits. In other words, a petitioner may show good cause under Rule 6 without meeting the high standard for an evidentiary hearing under the AEDPA. *See* James L. Liebman and Randy Hertz, *Federal Habeas Corpus Practice and Procedure,* 708 n. 4 1998 (noting that

"[a]lthough recent legislation [AEDPA] limits the availability of evidentiary hearings in certain circumstances, it does not appear to limit other fact-developing techniques...for proving factual allegations through evidence generated with the aid of financial assistance, discovery, and other investigative measures"). Therefore, the Court will analyze Petitioner's claims as it must, under Habeas Rule 6.

 Several factors lead to the conclusion that at least some of Petitioner's discovery requests should be granted.[2] First, more liberal discovery is appropriate in capital cases where the stakes for petitioner are so high. *See Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (noting that " 'the penalty of death is qualitatively different' from any other sentence....We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed.") (*quoting Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)). Moreover, court ordered discovery is often very useful when the petition alleges out-of-court misconduct on the part of the prosecution or law enforcement personnel similar to Mr. Payne's allegations that the prosecution failed to disclose exculpatory material at trial. *See generally, United States v. Weintraub,* 871 F.2d 1257, 1259 (5th Cir. 1989). Indeed, it may be impossible to prove even a meritorious claim without such court ordered discovery.

### A. *Interrogatories*

 Petitioner wishes to serve six separate interrogatories on Respondent. Each individual interrogatory must be related to a constitutional claim raised in Payne's petition. This means that each request must seek to discover evidence relevant to proving a claim before the court or to demonstrating a justification excusing procedural default. Interrogatories relevant only to developing a claim of actual innocence rather than to a specific constitutional claim must be denied because the underlying claim of actual innocence is not a ground for habeas relief absent an independent constitutional violation. *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).[3] In *Herrera,* the Supreme Court was clear that a claim of actual innocence unaccompanied by an allegation of a constitutional violation may not be the subject of federal habeas corpus relief.[4]

### 1. *Exculpatory evidence furnished to Payne's trial counsel*

 Petitioner requests that the government describe any and all exculpatory evidence that was furnished to Payne's trial attorney prior to trial. The Court GRANTS this discovery request because it relates to Petitioner's *Brady* claims which

---

2. By granting leave to conduct discovery, the Court does not in any way limit Respondent's ability to object to any discovery request in a manner consistent with the Federal Rules of Civil Procedure. In this motion, the Court simply addresses whether Petitioner has shown good cause under Habeas Rule 6 and such ruling leaves open the possibility that Petitioner could challenge the discovery requests under the Federal Rules of Civil Procedure but not under Habeas Rule 6.

3. An actual innocence claim raised under the fundamental miscarriage of justice exception is cognizable under *Herrera* because such an allegation relates directly to a constitutional claim and is raised only to excuse procedural default. Such "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera,* 506 U.S. at 404, 113 S.Ct. 853.

4. To the extent that Payne seeks to raise a claim of actual innocence based on newly discovered evidence, these claims must be raised through clemency proceedings in the state of Tennessee. *See* Tenn.Code Ann. § 40–27–101 *et seq. See also Herrera,* 506 U.S. at 412, 113 S.Ct. 853 (noting that Texas clemency procedure provided petitioner with a forum in which to raise his actual innocence claim and referring to executive clemency as the "historic remedy for preventing miscarriages of justice where judicial process has been exhausted.")

are currently pending before this Court. This request does not seek new information and is relevant to determining whether the prosecution, at the time of trial, disclosed all materially exculpatory evidence to Payne's trial counsel. This interrogatory does not require the government to provide any additional information and bears directly on claims before the Court and to determining whether other claims which were procedurally defaulted may nevertheless be presented under the fundamental miscarriage of justice exception. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

2. *Information on every person in Ms. Christopher's apartment between June 23, 1987 and June 27, 1987*

■ Interrogatory 2 contains a general request for information about every person over the age of twelve who may have been in Ms. Christopher's apartment between June 23, 1987 and June 27, 1987. The purpose of this interrogatory is not clear, making it difficult to determine whether Petitioner has shown good cause as required by Habeas Rule 6. Nevertheless, the Court assumes, based on footnote six of the discovery motion and on counsel's decision to include the affidavit of John Edward Williams, that Petitioner contends that this interrogatory relates to Claim 5 of his amended petition. Specifically, the interrogatory relates to the ineffective assistance of counsel claim in which Payne maintains that trial counsel's failure to properly investigate the facts of the case made it impossible for Payne to prove his innocence. Specifically, Payne claims that had trial counsel contacted Mr. Williams, counsel would have learned that there may have been another suspect who matched a description of Mr. Payne. To bolster this allegation, Petitioner attached to his motion the affidavit in which Mr. Williams stated that he saw a "black man" leave Ms. Christopher's building on the afternoon Ms. Christopher was murdered. These allegations are raised in Claim 5 of the amended habeas petition and this Court will address the merits of the claim under the Sixth and Fourteenth Amendments. Because Petitioner presents this allegation as an ineffective assistance of counsel claim rather than merely presenting a free-standing factual innocence claim, Payne has shown that the discovery request might lead to evidence which would be relevant to a claim in his petition. Specifically, information about Mr. Williams or any other person in the apartment just before the murder would shed light on the ineffective assistance claim by allowing Payne to meet the second element required under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)—that trial counsel's performance was so deficient that the verdict "would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. Therefore, the Court GRANTS this discovery request.

3. *Law enforcement reports regarding Ms. Christopher's apartment*

■ Next, Petitioner seeks a list of every occasion between June 27, 1982 and June 27, 1987 on which law enforcement received or responded to any report concerning Ms. Christopher's residence. Payne has not articulated good cause why this discovery request should be granted. Specifically, Petitioner has not shown how evidence sought through this interrogatory is relevant to any of the claims in his petition. This request is therefore DENIED.

4. *Narcotics information relating to Ms. Christopher*

Petitioner next seeks all information concerning the use, delivery, or sale of drugs by Ms. Christopher between 1982 and 1987. However, Payne has not shown good cause why this request should be granted. While the petition makes frequent reference to narcotics evidence which might relate to Mr. Payne's ability to form the requisite intent to commit first degree murder there is nothing in the

petition to which narcotics evidence relating to Ms. Christopher is relevant. Because nothing in his motion suggests how this evidence, even if it exists, is relevant to any claim in his petition, the request is DENIED.

5. *Information on all black males who may have been inside Ms. Christopher's apartment between June 27, 1982 and June 27, 1987*

██ Plaintiff has failed to show good cause for this overly broad interrogatory. To the extent that Petitioner seeks evidence related to any claim raised in his petition, such information concerning another possible suspect or any other claim, may be obtained through Interrogatory 2 which covers the relevant time period. This request is therefore DENIED.

6. *Information regarding statements of Charles Jones*

██ This discovery request must be DENIED because Petitioner has not shown good cause and has not identified a claim to which Mr. Jones statement is relevant. Though the Motion makes a general reference to *Brady* violations, there is no evidence that the prosecution, at the time of trial, knew of Mr. Jones or had any knowledge about his statement. Therefore, there could be no *Brady* violation and Petitioner has not shown how discovery would affect any claim in his petition. Furthermore, to the extent that this request relates to a free standing claim of actual innocence, the discovery request must be denied under *Herrera*.

7. *Statements made by Ms. Christopher to Kay Mason*

██ Petitioner seeks any information relating to a conversation between Ms. Christopher and her friend Kay Mason in which Ms. Christopher stated that she was having trouble with someone and was considering calling the police. The essence of

Petitioner's *Brady* claim is that after Mr. Payne was incarcerated, Ms. Mason received a threatening phone call warning her to keep quiet unless she wanted to suffer the same fate as "those children", presumably a reference to Ms. Christopher's children.[5] In his habeas petition, Payne claims that this evidence is exculpatory because it raises the possibility that someone other than Mr. Payne was responsible for Ms. Christopher's death. Moreover, the *Brady* claim relating to this evidence was presented to the state courts and will be addressed by this Court on the merits. Because the information sought in this interrogatory may lead to relevant evidence relating to a constitutional claim, the Court GRANTS this discovery request.

B. *Documents*

1. *Documents referring to interrogatories*

For the reasons stated in Part II(A) of this Order, the Court GRANTS that portion of document request Number One dealing with interrogatories 1,2, and 7 and DENIES the document requests pertaining to interrogatories 3,4,5, and 6.

2. *Criminal history of Barry Wiggins*

██ Petitioner's second document request seeks files and arrest records of Barry Wiggins. Petitioner acknowledges that his *Brady* claim regarding the Wiggins and intoxication evidence is procedurally defaulted based on his failure to present the claims to the Tennessee state courts either on direct appeal or during state post-conviction proceedings. Petitioner's Response to Warden's Motion for Summary Judgment at 4. Petitioner contends that despite this failure to raise the issue in state court, procedural default might be excused if Petitioner can show that a fundamental miscarriage of justice would result were Payne prevented from

---

5. Payne was also convicted of the murder of Ms. Christopher's daughter and attempted murder of her son.

presenting this claim in his federal habeas petition. Payne seeks additional discovery to determine whether he can escape procedural default pursuant to the fundamental miscarriage of justice exception. Specifically, Payne asserts that the Wiggins evidence might allow him to prove his actual innocence, thereby avoiding procedural default. If evidence exists that Payne was intoxicated at the time of the murder, he could not have formed the requisite intent to be convicted of first-degree murder. Therefore, he could have been convicted of second-degree murder only and avoided the death penalty. As stated above, a habeas petitioner may use a Habeas Rule 6 discovery motion to obtain evidence relevant to excusing procedural default. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. Therefore, this discovery request is GRANTED.

### C. *Depositions*

#### 1. *Darryl Shanks*

■ This request is related to a *Brady* claim which will be adjudicated on the merits as part of Payne's petition. Nevertheless, Mr. Payne cannot show good cause for this deposition. Mr. Shanks already signed a sworn affidavit in November 1992 and then testified at Payne's post-conviction hearing in 1996. The affidavit, if not viewed in conjunction with his testimony at the post-conviction hearing, indicates that the prosecution may have withheld exculpatory evidence from Payne prior to trial. First, Shanks stated that he had intercourse with Ms. Christopher approximately eight hours before her murder. This evidence might be exculpatory because it contradicts the sexual motive presented by the prosecution at trial by indicating that Mr. Shanks could have been the source of the semen. Of equal importance, Mr. Shanks also stated in his affidavit that he conveyed this information to Assistant District Attorney Tom Henderson prior to Payne's trial. This

fact appears to satisfy the *Brady* requirement that the exculpatory material be in the government's possession. However, during the post-conviction hearing, Shanks retreated from his affidavit and stated that he did not have intercourse with Ms. Christopher the night before her murder. His testimony essentially amounted to a retraction of his affidavit.

Petitioner is correct that there is a clear contradiction between Mr. Shanks' affidavit and the testimony given at the evidentiary hearing on Payne's post-conviction petition. This inconsistency renders Mr. Shanks an unreliable witness whose deposition testimony, regardless of its substance, would not assist Payne's presentation of his *Brady* claim. If Shanks were to again state that he did not have intercourse with Ms. Christopher, his testimony would obviously not help Mr. Payne. On the other hand, even if Mr. Shanks were to testify that they did have intercourse, he would be changing his position for the second time, rendering his testimony so unreliable that it would probably be irrelevant.[6] As an additional reason for the deposition, Petitioner states a desire to determine why Mr. Shanks changed his testimony at the post-conviction evidentiary hearing. Mr. Shanks' motivation for changing his mind is not relevant this habeas petition. Furthermore, Payne's counsel was able to cross-examine Mr. Shanks at the hearing and questioned Mr. Shanks under oath about whether he had sex with Ms. Christopher and whether he remembered signing the affidavit. The fact that counsel has already had the opportunity to cross-examine Shanks on this issue mitigates the need for a discovery deposition. *See United States ex rel. Blankenship,* 59 F.Supp.2d 736, 739 (N.D.Ill.1999)(denying petitioner's request to depose witness because, *inter alia,* petitioner's counsel previously cross-examined

---

**6.** There is a third permutation that would be equally unhelpful to Payne. If Shanks were to state that he did have intercourse with Ms. Christopher but did not convey this to the

prosecutor, there would be no *Brady* claim because the prosecutor would not have had this exculpatory information in his possession.

the same witness on precisely the same issue at the state evidentiary hearing).

Because good cause is not shown, the request to depose Darryl Shanks is DENIED.

### 2. Thomas Henderson

■■■ Petitioner next seeks the Court's permission to take the deposition of Assistant District Attorney Thomas Henderson, the lead prosecutor at Payne's trial. Payne attempts to show good cause for the discovery deposition by arguing that Mr. Henderson's testimony is pertinent to Petitioner's claim that the prosecution withheld exculpatory material in violation of *Brady*.

There is precedent for a federal district court granting permission for a habeas petitioner to take the deposition of the state prosecutor. *See, e.g., Williams v. Calderon,* 1998 WL 1039280 (C.D.Cal. March 25, 1998); *Ouimette v. Moran,* 762 F.Supp. 468, 470 (D.R.I.1991). Furthermore, such testimony is often highly relevant to the district court's ability to rule on constitutional claims presented in the petition. *See, e.g., United States ex rel. William Davis v. McMann,* 386 F.2d 611, 613–14 (2d Cir.1967)(using deposition of Assistant District Attorney in ruling on petitioner's ineffective assistance of counsel claim presented in his federal habeas petition). Often, the prosecutor is the only source of the information sought by Petitioner. In this case, Mr. Henderson's testimony is directly relevant to most of Mr. Payne's *Brady* claims. Only Mr. Henderson knows what information was in his possession at the time of Payne's trial. The need for his testimony is increased by the fact that Darryl Shanks' statements

regarding his conversations with Henderson lack credibility and the Court is denying Petitioner's request to depose Mr. Shanks. *Cf. Ferguson v. Abrams,* 1998 WL 305631, *3 (E.D.N.Y. May 5, 1998) (denying request to serve interrogatories on prosecutors because, *inter alia,* depositions would not uncover new information that had not previously been disclosed). The *Brady* violations alleged in Payne's petition are quite serious and Mr. Henderson's testimony would assist in the determination of whether there is merit to such claims. Because Petitioner has produced affidavits and other evidence of possible *Brady* violations, good cause has been shown and the Court GRANTS Petitioner's request to take the deposition of Assistant District Attorney Thomas Henderson.

### D. DNA Evidence

In his Supplemental Motion, petitioner raises for the first time the possibility that DNA evidence may undermine the state's proof of motive. Mr. Payne argues that the semen evidence obtained from Ms. Christopher might have been present as a result of intercourse with Mr. Shanks rather than as the result of sexual assault by Mr. Payne. Petitioner's position would be bolstered if the DNA sample matched Mr. Shanks and not Mr. Payne.[7] The evidence sought relates to Petitioner's *Brady* claim regarding the Shanks evidence.

■■■■ The more prudent course of action would have been to request the DNA evidence during the state post-conviction proceedings.[8] Nevertheless, Payne must demonstrate that the DNA evidence would lead to relevant evidence regarding

---

7. The DNA evidence would be meaningless unless a sample was obtained from Mr. Shanks for purposes of comparison. Petitioner does not seek a court order for such a sample from Mr. Shanks. The Court does not rule on the extremely complicated issue of whether the Court could order Mr. Shanks to provide a semen or blood sample for purposes of DNA analysis. Such a proposition seriously implicates the right to privacy and is not now before the Court.

8. There is some dispute as to when DNA analysis such as that sought in this case became available and sufficiently reliable to be offered as proof. It seems likely that the DNA technology was available at the time the Shelby County Criminal Court held an evidentiary hearing on Payne's post-conviction petition in August, 1996, though it may not have been available during Payne's direct appeal between 1988 and 1990.

claims in his petition. *Compare Toney v. Gammon,* 79 F.3d 693, 700 (8th Cir.1996) (granting discovery motion requesting DNA testing because the DNA evidence was directly related to ineffective assistance of counsel claim presented in the habeas petition) *with Stouffer v. Reynolds,* 168 F.3d 1155, 1173 (10th Cir.1999) (denying petitioner's discovery request for DNA evidence because petitioner failed to demonstrate a connection between the DNA evidence and any cognizable claim in the petition). Payne contends that the DNA evidence would bear on whether the prosecution knowingly withheld exculpatory evidence, thereby permitting the government to argue its sexual assault motive by attributing the semen to Mr. Payne rather than to Mr. Shanks. The relevant inquiry in a *Brady* claim is not merely whether the evidence in question was exculpatory and material. The evidence must also have been in the possession of the prosecution. The DNA evidence, at the time of the trial, was not known to or in the possession of the prosecutor. The Court agrees with Respondent that the DNA evidence would not be relevant to establishing the *Brady* claim because it does not change what was known by the prosecution at the time of trial.

Furthermore, the DNA evidence does not relate to a claim of actual innocence based on newly discovered evidence.[9] Rather, it relates to motive which is not an element of the crime of first degree murder in Tennessee.

Therefore, the Court DENIES Petitioner's request for DNA evidence.

### III. Conclusion

In summation, the Court GRANTS the motion for leave to conduct discovery as to interrogatories 1,2, and 7, GRANTS the document requests based on these three interrogatories, and GRANTS leave to take the deposition of Assistant District Attorney Thomas Henderson.

Regarding the Petitioner's other requests, the Court DENIES leave to conduct discovery as related to interrogatories 3,4,5, and 6, DENIES leave to conduct the document requests relating to interrogatories 3,4,5, and 6, DENIES the request to depose Darryl Shanks, and DENIES the request for DNA testing.

Finally, the Court DENIES Petitioner's request for support services because it denies the supplemental motion regarding DNA evidence.

---

**9.** As noted above, actual innocence would be relevant only if Payne were to argue that a claim related to the DNA evidence is not procedurally defaulted.